Commonwealth *v.* Kaplan, Appellant.

Argued December 5, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, and SPAETH, JJ. (VAN DER VOORT, J., absent).

*Alan M. Lerner*, with him *Roslyn G. Pollack*, and *Cohen, Shapiro, Polisher, Shiekman and Cohen*, for appellant.

*Mark C. Stephenson*, Assistant District Attorney, with him *Mark Sendrow* and *Steven H. Goldblatt*, Assistant District Attorneys, *Abraham J. Gafni*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *F. Emmett Fitzpatrick*, District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., April 22, 1975:

This is an appeal from the Court of Common Pleas, Criminal Division of Philadelphia County by the defendant-appellant, Eric Kaplan, challenging the sufficiency of the search warrant pursuant to which controlled substances were found and seized by the police and subsequently used against the defendant at trial.

On December 11, 1969, the defendant was arrested and charged with possession of a controlled substance. Police had conducted a search of his premises pursuant to a search warrant which is the basis of this appeal. The search revealed that the appellant had 48 pounds of marijuana in his apartment. Pre-trial motions to suppress the evidence obtained pursuant to the search warrant were denied and on September 7, 1971, the appellant was convicted of possession of narcotic drugs after a non-jury trial. The appellant was sentenced to five (5) years probation as a result of the conviction. Subsequently, he was granted the right to file an appeal *nunc pro tunc* by the court below and this appeal followed.

Appellant's sole contention on appeal is that the conviction should be overturned because the evidence seized and admitted into evidence at this trial was done so pursuant to an invalid search warrant. The warrant set forth that the premises to be searched was occupied by Eric Kaplan, the appellant. The premises was described

as "#1821 Pine Street, 3rd Floor Front—3 story brick building." Appellant challenges the sufficiency of the warrant because his apartment was located in the rear of the third floor of the building in question and not in the front. He also claims that the warrant is defective because the apartment building at the named address contained 4 floors and not 3.

Normally, separate living units of a multiple tenant building must be treated as if they were separate dwelling houses and probable cause must be shown to search each one. *Commonwealth v. Copertino,* 209 Pa. Superior Ct. 63, 224 A.2d 228 (1966). Therefore, if the search warrant in question does not specify which particular dwelling unit in a multiple dwelling building is to be the object of the search then the warrant is invalid and any evidence seized pursuant thereto is unlawfully obtained and must be suppressed at trial upon the filing of the proper motions. This is so unless probable cause is shown which justifies the search of the entire building. In our case there is no question that only one apartment in the building was authorized to be searched, that of Eric Kaplan. The only question is whether the search warrant described his apartment with sufficient specificity so as to validate the warrant.

In *Commonwealth v. Fiorini,* 202 Pa. Superior Ct. 88, 195 A.2d 119 (1963), we held that it is not necessary to a valid description of an apartment that its location within a particular building be given. To the contrary, a search warrant directing a search of an apartment house occupied by a number of different tenants, which states the name of the person occupying the apartment to be searched is valid. *Commonwealth v. Fiorini,* supra. Turning to the search warrant at issue in the instant case, it is apparent that the warrant set forth the name of the occupant of the apartment to be searched, the street address of the apartment building, and its location on the third floor of the building in which it was situated.

Thus, the warrant measured up to the standard enumerated in *Fiorini*, supra. The problem is that the building itself was described in the warrant as a 3 story building when the appellant alleged it consisted of 4 stories.

The appellee's brief contains a statement that the judge presiding in the suppression hearing went to see the apartment house and stated that from its architecture he could not determine whether it was a 3 or 4 story apartment building. However, there is no opinion of the court from the suppression hearing so that this does not constitute a recorded fact. We feel that this apparent error was purely technical in nature and not of the type which would invalidate the warrant as the street address of the building was set forth clearly in the warrant. To require a police officer to count up the exact amount of stories in a building in which a search was to be made pursuant to a valid warrant would reach the heights of absurdity when another, clearer description of the building, i.e., its street address was available and furnished to the magistrate who issued the warrant. Thus, we hold that this fact did not invalidate the warrant.

Appellant also contends that since the warrant described the apartment as "3rd floor front" rather than "3rd floor rear" that this rendered the warrant invalid. This contention, too, lacks merit since under *Fiorini*, supra, it is not necessary to set forth the exact location of an apartment within a building in the search warrant. In this instance, the police were able to ascertain the location of Eric Kaplan's apartment in a structure at 1821 Pine Street. His apartment and only his alone was searched. Although not determinative of the issue this fact does indicate that the description of the premises in the warrant was sufficient to enable the police to search the correct apartment. Again, we feel it would be unsound to base a holding in a case involving the validity of a search warrant on such relative terms as "front" and "rear" when other facts set forth in the warrant clearly

describe the premises to be searched. As former President Judge J. Colvin WRIGHT stated in his Dissenting Opinion in *Copertino,* supra, "Our approach to problems involving the detection and prosecution of crime should be on the basis of common sense, not super-technicality." To hold as appellant would have us do in this case would be an exercise in supertechnicality which would do nothing to protect innocent people in the privacy of their abodes.

This case is further distinguishable from *Copertino,* supra, because the officers serving the warrant rang the bell at the main entrance of the apartment at the address described in the warrant. The door was opened by two people and the officers recognized one of the men opening the door as Eric Kaplan, the appellant. The officers gave him the search warrant and he accompanied them to his apartment where the search was made. For these reasons, we affirm the opinion of the court below and hold the warrant to be valid.

Judgment affirmed.

CONCURRING OPINION BY HOFFMAN, J.:

I concur in the result reached by the Majority. I feel that an additional word is necessary to make clear that the Court's opinion does not erode the strict requirement of specificity necessary to validate a search warrant.

Article I, §8 of the Pennsylvania Constitution provides ". . . no warrant . . . shall issue without describing [any place or person to be seized] as nearly as may be. . . ." A frequent problem under §8 arises whenever the premises to be searched are located within a multiple-unit dwelling. Our Court has held a general description of the premises insufficient to establish probable cause in several instances. For example, in *Commonwealth v. Copertino,* 209 Pa. Superior Ct. 63, 224 A.2d 228 (1966), the warrant described an entire two-family dwelling as the location of the search, despite the fact that the police knew that the building contained two separate residences and

that only one of the two was used by the named parties for illegal gambling activity—"[t]herefore, no probable cause was shown to support a warrant commanding the search of the entire building, and the warrant which commanded that search was invalid." 209 Pa. Superior Ct. at 69, 224 A.2d at 230. Accord, *Commonwealth v. Johnson,* 229 Pa. Superior Ct. 182, 323 A.2d 26 (1974) : the warrant described the entire house, whereas police knew that the illegal gambling activity occurred only in a first floor apartment. Another example of an insufficient warrant is found in *Commonwealth v. Smyser,* 205 Pa. Superior Ct. 599, 211 A.2d 59 (1965). The affidavit supporting the warrant mentioned no occupant's name and specified only "the apartments located at 82 South Main Street, New Hope, Pennsylvania" as the place to be searched. Our Court concluded that "[u]nder the language of the Pennsylvania Constitution the complaint falls short of 'describing . . . as nearly as may be' the place to be searched or the things or persons to be seized." 205 Pa. Superior Ct. at 605, 211 A.2d at 63. See also, *Commonwealth v. Muscheck,* 222 Pa. Superior Ct. 348, 294 A.2d 809 (1972). (HOFFMAN, J., dissenting opinion), reversed 460 Pa. 590, 334 A.2d 248 (1975).

The question in the instant case is whether the warrant permitted the search of only one clearly specified apartment. The warrant left no room for interpretation concerning the area to be searched: only the apartment listed in Eric Kaplan's name could have been searched. The police were under a duty to locate appellant's apartment; had they attempted to execute the warrant by searching the third floor front apartment, that search would have been illegal. Probable cause was based on an informant's knowledge that Kaplan alone was engaged in drug trafficking and that he was using his Pine Street residence for that purpose. The warrant, therefore, conformed to the specificity required by *Commonwealth v. Fiorini,* 202 Pa. Superior Ct. 88, 93, 195 A.2d 119, 122

(1963) : " 'It is enough to describe *a definite ascertainable place excluding all others.'* It is generally held under the Fourth Amendment of the United States Constitution that a search warrant directing a search of an apartment house or other building occupied by a number of different tenants, which states the name of the persons occupying the apartment to be searched, is valid." (Emphasis added).

Thus, there is no question that the warrant in the instant case met constitutional requirements. The fact that the appellant led the police to his apartment is thus irrelevant to the disposition of the case. Had the warrant been insufficient, the appellant's acquiescence in the police's request to take them to his apartment could not have validated the otherwise illegal search. See *Bumper v. North Carolina,* 391 U.S. 543 (1968) ; *United States ex rel. Gockley v. Myers,* 378 F.2d 398 (3d Cir. 1967).

———

DISSENTING OPINION BY SPAETH, J. :

In my view the search warrant was unconstitutionally ambiguous, and I therefore dissent.

The Fourth Amendment of the United States Constitution requires that "no warrant shall issue, but upon probable cause supported by oath or affirmation, and *particularly describing the place to be searched,* and the persons or things to be seized." (Emphasis added.) Article I, Section 8 of the Pennsylvania Constitution contains a similar requirement: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue *without describing them as nearly as may be,* nor without probable cause, supported by oath or affirmation subscribed to by the affiant." (Emphasis added.) Thus, a search warrant must describe a specific place, accurately and definitively.

In the present case, the search warrant described the premises to be searched as those occupied by Eric Kaplan at "#1821 Pine Street, 3rd floor front—3 story building." In fact, the building was four floors and Kaplan's apartment was located in the rear of the third floor, not in the front. The majority and concurring opinions argue nevertheless that because the warrant specified Kaplan's apartment, it "left no room for interpretation concerning the area to be searched." HOFFMAN, J., concurring opinion, p. 107. I disagree. It seems to me, that as the warrant was written, the police could have chosen to search either the third floor front apartment or the apartment marked as Kaplan's. There is no reason why the name should be more determinative than the location. Indeed, I should have thought the opposite to be true. *See United States v. Ortiz,* 311 F. Supp. 880, 883 (D. Colo. 1970), *aff'd,* 445 F.2d 1100 (10th Cir. 1971), *cert. denied,* 404 U.S. 993 ("[T]here is no need to include the owner's or defendant's name on a search warrant that otherwise sufficiently describes the premises to be searched.").

The specificity requirement was designed to prevent precisely the situation we have here, where the police are allowed to choose which apartment to search.[1] In *United States v. Higgins,* 428 F.2d 232 (7th Cir. 1970), *cert. denied,* 404 U.S. 959, the search warrant authorized a search of "the premises known as basement apartment

---

1. "[T]he determining factor . . . whether a search warrant describes the premises to be searched with sufficient particularity is . . . whether there is any reasonable probability that another premises might be mistakenly searched which is not the one intended to be searched under the search warrant." *United States v. Sklaroff,* 323 F. Supp. 296, 321 (S.D. Fla. 1971). *See also Commonwealth v. Copertino,* 209 Pa. Superior Ct. 63, 224 A.2d 228 (1966) (search warrant giving authority to search a two story building at "Passyunk Ave., 7217 W.—2 story dwelling with store front." Occupied by Marie Ipri, John Dubois, Alfred Battipaglia and Silvo Lerro, held invalid because there were in fact two separate apartments at that address).

building at 4432-38 South Calumet Avenue, Chicago, Illinois." The actual building at that address was a three-story building with four apartments on each floor and three in the basement. One of these basement apartments was occupied by the Barfield family, another by Morris Jones, and a third by defendant Higgins. The court described the police actions on the night of the search as follows: "On the evening of February 17, 1966, Barfield was sleeping when a man entered his apartment, looked around, asked Barfield if he knew a man named 'Sonny,' and left. Shortly thereafter, Jones was in bed when two men who identified themselves as police officers kicked open his partially closed door, entered his apartment and left in about five minutes. A few minutes later the agents kicked in the door to Higgins' apartment, conducted a search and arrested him. . . . It must be evident that the officers could not determine from the warrant which apartment was to be searched and that they made that determination by searching all apartments until they discovered the one they were looking for." *Id.* at 234-235. The court held the warrant to be constitutionally defective for lack of specificity. The same decision should be made in the present case if we are to prevent such occurrences from happening in Pennsylvania.

In addition, as Judge HOFFMAN observes, the search cannot be constitutionally justified on the basis of consent. In *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968), the United States Supreme Court held: "A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." (Footnote omitted.) Since I believe the warrant was invalid in this case, appellant's decision to lead the police to his apartment when confronted with the search warrant cannot be construed as voluntary consent.

The judgment of sentence should be reversed.