363 A.2d 1246

COMMONWEALTH of Pennsylvania

v.

Bruce A. LATSHAW, Appellant.

Superior Court of Pennsylvania.

Sept. 27, 1976.

234

William F. Donovan, State College, for appellant.

C. Kent Price, Asst. Dist. Atty., State College, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken to our Court from judgment of sentence rendered following a September 5, 1974, trial before Judge R. Paul Campbell, without a jury. Appellant had been arrested, charged with, and indicted for violation of "The Controlled Substance, Drug, Device and Cosmetic Act", section 13(a)(30).[1] A motion to suppress evidence of criminality seized prior to arrest had been filed and denied prior to trial. Appellant was adjudged guilty and sentenced to pay costs and a fine of $2,500.00 and to un-

1. Act of 1972, April 14, P.L. 233, § 13, 35 P.S. § 780.113(a)(30)

dergo imprisonment in the Centre County jail for not less than one nor more than twenty-three months.

The facts show that on or about November of 1972, Miss Minnie Bubb rented a portion of her house to a Mr. and Mrs. Robert Hinds, who are her niece and husband. The lease was oral, in an amount of $100.00 per month including utilities. It is both her and Mr. Hinds' uncontradicted testimony that Miss Bubb permitted the Hinds the use of her nearby barn, but that such was gratuitous only and not a part of the lease. In fact, the Hinds as well as others had gratuitously made use of this barn before November of 1972.

Mr. Hinds testified to an arrangement between him and appellant whereby Hinds permitted appellant use of the loft of the barn for storage of certain bulk items, and was paid $75.00 per shipment. It was Hinds' permission alone under which appellant operated.

On or about July of 1973, Miss Bubb, having noticed strangers in and about the barn but making no inquiry, went to the immediate vicinity of that building and spotted a quantity of greenish "weeds". Subsequently, with her sister, she entered the barn, found a paper bag of these "weeds", and called the State Police. Miss Bubb gave her permission to the State Police for them to search the barn, wherein 76 pounds of marijuana (later proved to be so) was found in seven cartons and two footlockers. Other material used in the curing and packaging of marijuana was found and seized.

Appellant now argues that the warrantless search of the barn and consequent seizure should be proscribed for the reason that his permission to use the barn came from a lessee of the structure, which lessee had an expectation that his use of the building would be protected from warrantless searches. Appellant argues that his rights, as well as interest to contest the search and seizure, stem from lessee Hinds' rights, and he calls himself a guest or invitee of the lessee. Appellant further argues that

the lower court erred in opining that the "joint control doctrine" applies in part, i. e., that both Miss Bubb and Hinds had control of the barn to the end that Miss Bubb could grant permission to search. Appellant argues that Miss Bubb never used the structure and thereby had relinquished control of it and consequently had no authority to grant permission to search.

██ A thorough study of the testimony of this case leads us to the conclusion that Hinds had only a gratuitous license to use part of the barn. Miss Minnie Bubb, owner, never relinquished any indicia of custody or control over the barn. She was clearly within her rights to allow individuals to use the barn and to make whatever arrangements she chose to that end. Not only did she have the right of ownership but also she was a joint user of the structure, and under the authority of *Commonwealth v. Kontos*, 442 Pa. 343, 276 A.2d 830 (1971), the joint user or custodian can consent to a search. Whatever rights Hinds had to the Fourth Amendment protection of his goods in the barn, or of the goods there subject to his custody, may be lost by means of the consent to search as given by the joint user. *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). The facts as well may give rise to the conclusion that the barn was in the exclusive control of Miss Bubb, she not having leased it to anyone. Her consent to search her property thus waives the requirement of a search warrant. The holding of *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973), is inapposite in that Miss Bubb did not know who might be the owner of the cartons, footlockers, and materiel. Where such knowledge is lacking, it is unreasonable to expect the police to be able to frame a search warrant. The consent of the owner to the search is valid, as it was in *Commonwealth v. Anderson*, 208 Pa.Super. 323, 222 A.2d 495 (1966).

██ Holding that Miss Bubb's consent to search was valid, and the seizure of contraband proper, we find that

Hinds' use of the barn was not such as to give rise to a Fourth Amendment protection against unreasonable search and seizure in him alone. Holding thus, we need not address the further argument as to appellant's standing to raise the issue of allegedly invalid search and seizure.

Judgment of sentence affirmed.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

HOFFMAN, Judge (dissenting):

The Majority holds that Miss Bubb had the right to authorize a search of the barn located on her Centre County farm. I agree with that conclusion. *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Commonwealth v. Kontos,* 442 Pa. 343, 276 A.2d 830 (1971). Cf. *Commonwealth v. Storck,* 442 Pa. 197, 275 A.2d 362 (1971); *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A. 2d 249 (1966). But the Court goes further and concludes that the scope of Miss Bubb's authority was sufficiently broad to permit a search of appellant's closed footlockers and cartons found in the barn. I disagree.

As stated by the Majority, Minnie Bubb rented part of her home to her niece and her niece's husband. She permitted them to use a barn on the premises. In turn, the niece's husband permitted appellant to use the loft of the barn to store boxes and was paid $75.00 "per shipment." After Miss Bubb discovered a suspicious "weed" in a paper sack in the barn, she requested that the State Police investigate and granted them access to the barn. Once in the barn, the police opened several boxes and two footlockers, containing a total of seventy-six pounds of marijuana. After questioning, the niece's husband implicated appellant as the owner of the boxes.

Initially, except for the "weed" discovered in a paper sack by Minnie Bubb which led to her call to the police,

this case in no way involves a private search that nets contraband. See *Commonwealth v. Kozak,* 233 Pa.Super. 348, 336 A.2d 387 (1975); *Commonwealth v. Eshelman,* 236 Pa.Super. 223, 345 A.2d 286 (1975) (dissenting opinion by Hoffman, J.). Further, Minnie Bubb retained the power to consent to a search of the *barn,* in that she was the owner and joint user of the barn. *Frazier v. Cupp,* supra; *Commonwealth v. Kontos,* supra. That consent, however, was limited. Once in the barn, Minnie Bubb could not consent to a search of areas in which or over which she had no authority.

This conclusion is bolstered by our Supreme Court's decision in *Commonwealth v. Platou,* 455 Pa. 258, 260–62, 312 A.2d 29, 31 (1973): "At the time of the search appellant was a guest in the apartment of his friend, Robert Wander. On the basis of a sale of marijuana by Wander to a police agent, an arrest warrant for him and a search warrant for his premises were obtained. The police arrested Wander at his place of work and accompanied by him proceeded to his apartment. At this time, the police had no knowledge of appellant's existence. Approaching the apartment, Wander informed the police that he had a friend visiting him. When the police arrived, they read the warrant to Wander and entered. . . . [T]he record does establish that the police announced they had authority to search everything in the apartment and that appellant claimed two suitcases lying on the floor . . . were his. Despite being on notice that the suitcases did not belong to Wander, the police began searching them simultaneously with their initiating a search of the apartment. In one of appellant's suitcases they found a single ounce of marijuana.

"The Commonwealth attempts to justify its search of appellant's suitcases solely on the ground that it was authorized by a valid warrant. It argues that because the suitcases were separated from appellant's person and lo-

cated within Wander's apartment, they were properly searched. We disagree.

"The search of appellant's suitcase under the authority of the search warrant for Wander's apartment is analogous to those situations in which consent searches have been invalidated because the place or thing searched was in the exclusive control or possession of a nonconsenting party, and the consenting party did not have 'an independent right of his own to consent to the seizure. . . ' *Commonwealth v. Storck*, 442 Pa. 197, 200, 275 A.2d 362, 364 (1971) [citations omitted]. It is controlled by the same rationale. The reasoning of these 'consent' search cases is that a person cannot waive the Fourth Amendment rights of another with respect to property owned or possessed by that other person."

In my view, the instant case is controlled by *Platou*. Despite Wander's control over the premises, Platou did not lose his fourth amendment right to privacy. In the instant case, Miss Bubb knew that her niece and her husband used the barn and had seen their friends in the area of the barn. She could infer, therefore, that the footlockers and cartons were not abandoned property. That is, boxes and footlockers stored in a barn loft, by their nature, show that their owner has an expectation of privacy concerning the contents. Further, appellant's view was not unreasonable. He had entered into a financial arrangement with the niece's husband, legally on the premises, to store the boxes. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The Majority attempts to distinguish *Platou* from the instant case as follows: "The holding of *Commonwealth v. Platou*, [supra], is inapposite in that Miss Bubb did not know who might be the owner of the cartons, footlockers, and materiel. Where such knowledge is lacking, it is unreasonable to expect the police to be able to frame a search warrant." (At 1247). This is simply not true, provided,

240

of course, that the police have probable cause to search.[1] Rule 2005, Pa.R.Crim.P., provides that: "Each search warrant shall:

"(a) specify the date and time of issuance;

"(b) identify the property to be seized;

"(c) name or describe with particularity the *person or place* to be searched; . . .." See also, *Commonwealth v. Kaplan*, 234 Pa.Super. 102, 339 A.2d 86 (1975). That is, the police may procure a warrant despite the fact that they do not know the owner of the suspected contraband. In the instant case, the police could have obtained a warrant by showing probable cause to suspect that the boxes and footlockers contained marijuana; they were not required to swear that appellant owned the contraband.

Therefore, I would reverse the judgment of sentence and order a new trial.

SPAETH, J., joins in this Dissenting Opinion.

---

1. Under the facts of the instant case, it is not necessary to determine whether the police in fact had probable cause to search appellant's belongings.