613 A.2d 577

**In the Interest of Malick WILKS.**

**Appeal of COMMONWEALTH OF PENNSYLVANIA, Appellant.**

Superior Court of Pennsylvania.

Argued June 25, 1992.

Filed Aug. 13, 1992.

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com. appellant.

Fortunato N. Perri, Jr., Philadelphia, for appellee.

Before JOHNSON, FORD ELLIOTT and HOFFMAN, JJ.

JOHNSON, Judge:

The Commonwealth appeals from the pre-trial order of the Court of Common Pleas of Philadelphia County suppressing evidence obtained during a search of a multi-dwelling building at 1013 Brown Place, Philadelphia. The suppression court held that the search warrant failed to describe the premises to be searched with sufficient particularity because neither the search warrant nor the supporting affidavit of probable cause mentioned the number of the apartment to be searched. We affirm.

Our Supreme Court has recently restated the rule to be followed when reviewing the grant of a suppression motion, as follows:

[W]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa.R.Crim.P. 323(h). In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth

who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.

*Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992), No. 75 E.D. Appeal Docket 1991 (J–149–1992), filed May 20, 1992, Larsen, J., slip op., pp. 1–2, (citations omitted).

■ We are limited to the evidence on the record of the suppression hearing and the findings of the trial court. In reviewing the suppression court's determination, we must view the facts in the light most favorable to the prevailing party. *Compare Commonwealth v. Edwards,* 528 Pa. 103, 105, 595 A.2d 52, 53 (1991); *Commonwealth v. Robinson,* 518 Pa. 156, 159, 541 A.2d 1387, 1388–89 (1988).

When the suppression hearing testimony is reviewed in a light most favorable to Wilks, the prevailing party, it reveals the following facts. On June 14, 1991, Detective Gerald Lynch and his partner, Detective John McNamee, investigated a report that drug activity was taking place at 1013 Brown Place, in the Richard Allen public housing project in Philadelphia. During a surveillance at that location, Detectives Lynch and McNamee observed a male, later identified as Eric Simmons, aka Eric Sims, carrying a brown paper bag. Within a five minute time frame, Sims was approached by four unidentified males. In exchange for U.S. currency, Sims reached into the bag and handed each male a black and white object which contained a white substance. The detectives then observed Sims go into 1013 Brown Place, walk into the first floor hallway and up the flight of steps. N.T., July 30, 1991, at 8. He returned moments later with the brown paper bag and made another transaction. When the detectives left the location of their surveillance and drove into the courtyard of the project, Sims dropped the bag and fled. Although the detectives were unable to apprehend Sims, they did retrieve his brown paper bag which contained sixty-one vials of cocaine.

Based on the information he received from Detectives Lynch and McNamee, narcotics Officer Robert Tames drafted

an affidavit of probable cause and a search warrant for the premises. In addition to naming Eric Sims as the owner/occupant of the premises to be searched, Officer Tames described the location as follows:

1013 BROWN.PLACE 2-STORY BRICK DWELLING 2ND FLOOR PROJECT HOUSE.

Prior to trial, defense counsel presented the court a Motion to Suppress any physical evidence recovered, based on the assertion that the search warrant failed to describe with particularity the place to be searched. At the suppression hearing, Detective Lynch testified that 1013 Brown Place is a three-story housing project, which contains three units—A, B, and C. Apartment A is located on the first level. Both Apartments B and C are two levels, located on the second and third floors. N.T., July 30, 1991, at 10–11. On cross-examination, Detective Lynch stated that he is familiar with all of the Richard Allen apartments and that they are all divided similarly, with the entrances to Apartment B and C on the second floor. *Id.* at 23. In addition, Detective Lynch testified that both the probable cause affidavit and the search warrant omitted any reference to Apartment B, and simply directed the search to the 2nd floor of 1013 Brown Place. *Id.* at 22–23.

Sergeant Mander testified that on June 18, 1991, the narcotics team went to the second floor of 1013 Brown Place to execute the warrant. When the officers got to the second floor, the door of Apartment C was opened, the door of Apartment B was closed. He testified that several officers went into Apartment C to "see if they could identify the person they wanted in the warrant," *Id.* at 40, while another officer knocked on the door of apartment B and announced "Police, open the door. We have a warrant." *Id.* at 33–34. Moments later, after hearing commotion inside Apartment B, the police found the door unlocked and entered the premises. Police secured the second floor area and found appellant, Malick Wilks, sitting on the couch inside Apartment B. When Wilks' mother arrived, she informed police that one of the locked bedrooms inside Apartment B belonged to her son,

Wilks. Inside Wilks' bedroom the police discovered a large quantity of drugs and a handgun.

The suppression court ruled that the search warrant was defective in that it failed to name or describe with particularity the place to be searched when the specific location was known, i.e., 1013–B Brown Place. The Commonwealth appeals from the order granting Wilks' motion to suppress, and raises the following issue for our review:

WHETHER THE SUPPRESSION COURT ERRED IN SUPPRESSING PHYSICAL EVIDENCE ON THE BASIS THAT THE SEARCH WARRANT DID NOT IDENTIFY THE APARTMENT NUMBER OF THE PLACE TO BE SEARCHED, WHERE THE WARRANT ADEQUATELY IDENTIFIED THE LOCATION BY ADDRESS, PHYSICAL DESCRIPTION, FLOOR AND NAME OF OCCUPANT, AND THE TARGETED APARTMENT WAS THE ONLY PLACE SEARCHED AND THE ONLY PLACE FROM WHICH EVIDENCE WAS SEIZED?

A search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units. *Commonwealth v. Carlisle*, 517 Pa. 36, 40, 534 A.2d 469, 471 (1987) (citations omitted). Where the description provided is precise enough to enable the officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity. *In re Search Warrant B–21778*, 341 Pa.Super. 350, 359, 491 A.2d 851, 856 (1985). Moreover, a warrant directing a search of more than one living unit is valid only if there is probable cause that all are being used for the unlawful purposes involved. *Commonwealth v. Copertino*, 209 Pa.Super. 63, 224 A.2d 228 (1966). Finally, the reviewing court must make a practical, common-sense decision whether the place to be searched has been

specified with sufficient particularity. *Carlisle, supra,* 517 Pa. at 42, 534 A.2d at 472

■ First, relying on *Commonwealth v. Fiorini,* 202 Pa.Super. 88, 195 A.2d 119 (1963), the Commonwealth argues that although neither the search warrant nor the affidavit of probable cause included the designation "Apartment B," the warrant was valid since the warrant contained the name of the "owner/occupant," Eric Sims. Appellant's Brief at 17. We disagree.

In *Fiorini, supra,* the search warrant described the premises to be searched as a first floor pool room and second floor apartment occupied by Joseph V. Fiorini in a two and one half story building located at 872 N. 8th Street. *Id.,* 202 Pa.Superior Ct. at 92–93, 195 A.2d at 122. The search warrant did not include the specific apartment number, however, the court expressly found that Fiorini's occupancy of the premises was not questioned. We upheld the validity of the search warrant finding that the description of the premises "limit[ed] the search to those parts which were occupied by or in possession of ... [Fiorini]." *Id.* at 93, 195 A.2d at 122. Given those particular circumstances, we concluded that the location of a particular apartment within a building is not necessary to a valid description, when there is proof of occupancy and control. *Id.,* 202 Pa.Superior Ct. at 94, 195 A.2d at 122.

In this case, however, unlike *Fiorini,* the hearing failed to establish whether Eric Sims, the only person designated on the search warrant, lived in Apartment B or occupied the premises at all. In fact, the record shows that several officers entered Apartment C to see if they "could identify the person they wanted in the warrant," i.e. Eric Sims. In addition, the only evidence presented as to the occupancy of Apartment B was offered by Sergeant Mander who testified that two bedrooms located in the apartment belonged to Sallie Wilks and her son Malick Wilks. He also testified that the mail which was confiscated from Apartment B belonged to Malick Wilks. N.T., July 30, 1991, at 37–38. Based on this record, we are unable to conclude that the description of the premises limited the search to those parts of 1013 Brown Place occupied by or

in the possession of Eric Sims. Thus, we are constrained to find the Commonwealth's reliance on *Fiorini* misplaced.

The Commonwealth, citing to *Commonwealth v. Kaplan*, 234 Pa.Super. 102, 339 A.2d 86 (1975), also contends that the omission of "B" from apartment number was "at most, a technical failure." Again, we are unable to agree. In *Kaplan*, the police sought to search the apartment of Eric Kaplan with a warrant which incorrectly described his residence as "# 1812 Pine Street, 3rd Floor Front—3 story brick building." *Id.*, 234 Pa.Superior Ct. at 104, 339 A.2d at 87. Kaplan challenged the sufficiency of the warrant, claiming that it was invalid because he lived in the rear apartment and his building contained four floors rather than three. There, relying on *Fiorini*, we held that despite the errors on the face of the warrant, the facts set forth in the warrant clearly described the premises to be searched. *Id.* at 105, 339 A.2d at 88. In addition, we held that sufficient proof of Kaplan's occupancy was available to the officers conducting the search and the error regarding the number of floors was "purely technical" given the sufficiency of the other particular information contained in the warrant.

In the present case, however, the warrant merely limited the search to the second floor of 1013 Brown Place. It did not specify which apartment on the second floor was to be searched. Moreover, the affidavit for probable cause also failed to state with particularity the place to be searched. *Carlisle, supra.* (if the affidavit, statutorily required to be attached to a search warrant, states the address and specific apartment number to be searched, a warrant which fails to specify the specific apartment number will not fail for lack of particularity). The affidavit simply stated that "1013 Brown Place 2nd Floor is being used as a stash house by a male by the name of Eric Simmons is selling from that location." Eric Sims' occupancy at 1013–B Brown Place was *never* established. Both the warrant and affidavit failed to specify that Apartment B was the intended location of the search, even though officers testified that they were aware that the entrances to two separate apartments were located on the 2nd floor of 1013 Brown Place. Upon arriving at the second floor

of 1013 Brown Place, several officers actually entered the premises of Apartment C and inquired about the person named in the warrant. Moreover, there was no probable cause shown to justify the search of the entire second floor. *Copertino, supra.* Thus, we conclude that the warrant did not clearly describe the premises to be searched, but in essence, without probable cause, authorized the search of both apartments B and C which were located on the second floor.

 In the alternative, the Commonwealth argues that although the warrant did not articulate that Apartment B was the target, the only apartment actually searched was Apartment B, thus, Wilks was not aggrieved. We rejected this very argument in *Copertino, supra.* In *Copertino,* the search warrant described the premises to be searched as "Passyunk Ave. 7217 W.—2 story dwelling with store front." In fact, there were two separate apartments in 7217 West Passyunk Avenue, one on the first floor and one on the second floor. The court held that the warrant was invalid because no probable cause was shown authorizing the search of the whole building. We held:

> The fact that only the first floor was actually searched will not validate the warrant which was illegal when issued. The validity of the warrant is dependent upon the facts shown at the time of its issuance.

*Id.,* 209 Pa.Superior Ct. at 69, 224 A.2d at 230–231. *Compare Commonwealth v. Yucknevage,* 257 Pa.Super. 19, 390 A.2d 225 (1978) (warrant established probable cause to search defendant's apartment, therefore, he was not "aggrieved" by a too-extensive search).

Based upon the foregoing, we affirm the order of the suppression court.

Order affirmed.