## Commonwealth v. Dawson.

*Thomas Minnet*, for plaintiff.
*John Bongivengo*, for defendant.

MOTTO, *J.*, February 1, 2013— Before the court for disposition is the defendant's motion for suppression of evidence. The defendant, Dajuan Marshawn Dawson, has been charged with criminal homicide, aggravated assault, firearms not to be carried, simple assault, and reckless endangering. The defendant contends that evidence which the commonwealth seeks to use against him was seized in violation of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and *Article 1, §8* of the Pennsylvania Constitution. The defendant argues that the search warrant executed by the New Castle Police Department was invalid because it failed on its face to state with particularity the specific apartment within the residence to be searched, and that

no exigent circumstances existed to alleviate the need for a valid warrant that properly identified the correct apartment that defendant occupied, which was in fact the subject of the search and seizure of evidence. The commonwealth opposes the instant motion, contending that search warrant was sufficient to authorize the search of defendant's apartment, even though it did not specifically identify which apartment within the residential structure was to be the subject of the search. The warrant identified the premises as "302 Boyles Avenue...a white duplex."

On September 13, 2011, New Castle Police were dispatched to the area between 1105 and 1109 Pin Oak Drive in reference to a homicide. The victim, Zarmara Stelter, died as a result of a single gunshot wound to the head. Sergeant David Cumo of the New Castle Police Department was the first detective at the scene and interviewed several witnesses. Sergeant Cumo was advised that a fight had broken out between two females in front of 1107 Pin Oak Drive. The witnesses stated that the victim was attempting to break up the fight when he was shot. The witnesses claimed to have heard only one gunshot. A single Speer brand 9 millimeter shell casing was found in front of the residence, just west of the front walkway.

On September 14, 2011, Jessica Hooks came to the New Castle Police Station to give a statement in reference to the shooting at 1107 Pin Oak Drive. The interview was conducted by Sergeant Kevin Seelbaugh and Sergeant David Cumo of the New Castle Police Department. Within

her statement, Ms. Hooks identified the defendant as the alleged shooter. The statement was included in Sergeant Kevin Seelbaugh's affidavit of probable cause. Ms. Hooks also told new castle police that the defendant was wearing a blue, zip-up hoodie, a white t-shirt, and dark jeans. Sergeant Cumo presented Ms. Hooks with a photo lineup containing the defendant's photo. Ms. Hooks positively identified the defendant.

Prior to the aforesaid incident, New Castle Police were provided with information regarding the defendant's residence from Mr. Jarrod Andrews. On August 11, 2011, Mr. Andrews told New Castle Police that the defendant was residing at 302 Boyles Avenue in New Castle. Mr. Andrews informed New Castle Police that he "rents" the defendant his car, and picks up and drops off the defendant at that residence. Mr. Andrews also indicated that he comes and goes from the back door of the residence.

On September 14 and 15, 2011, New Castle Police received several anonymous tips that the defendant was preparing to flee to Detroit, Michigan. The anonymous information also provided that the defendant was hiding in a white duplex on Boyles Avenue. This information was consistent with the information provided by Mr. Andrews.

Relying upon the information provided by Ms. Hooks, Mr. Andrews, and the anonymous tip, Sergeant Seelbaugh requested a search warrant for the residence at 302 Boyles Avenue. The items specified to be searched for were a 9

millimeter handgun, 9 millimeter ammunition, and a blue zip-up hoodie. District Justice Melissa Amodie issued the search warrant on September 15, 2011 at 9:15 AM.

On November 17, 2011, a hearing on the defendant's instant motion was held before the court. The commonwealth presented testimony of Sergeant Seelbaugh. Sergeant Seelbaugh testified that due to the nature of the charges, the warrant was considered high risk and the New Castle Police Department's special response team (hereinafter, "SRT") was activated in executing the search warrant. Sergeant Seelbaugh also testified that information provided by several individuals, as well was photographs of the defendant on Facebook, suggested that the defendant was living inside of a residence with a sharply tilted roof that looked like a living room. Based on this information, Sergeant Seelbaugh indicated that the SRT believed that the defendant was on the second floor of 302 Boyles Avenue.

Sergeant Seelbaugh testified that the SRT utilized a fire escape in the back of the residence to execute the search warrant. The SRT planned to make entry into the residence from the highest level and search down. Sergeant Seelbaugh explained that this method was safer and tactically sound as opposed to attempting to ascend a set of stairs into possible gunfire. The SRT set a perimeter around the building and then used the fire escape to make entry into what turned out to be a third floor apartment. Sergeant Seelbaugh indicated that the SRT made contact

with the occupant of the third floor apartment, whom they quickly realized was not the defendant.

Sergeant Seelbaugh explained that from a tactical standpoint, the SRT had lost the element of surprise. Sergeant Seelbaugh stated that he did not want to risk taking the time to go back for another search warrant, and felt that exigent circumstances existed to allow the team to continue searching for the defendant. The SRT found mail within the defendant's mailbox that verified that the defendant lived on the first floor. The SRT knocked and announced their presence, and made entry into the first floor apartment.

Sergeant Seelbaugh testified that nobody was in the apartment of the time. Within the apartment, the SRT located and seized a Titan 25 semiautomatic pistol, a Ruger 22 caliber pistol, a twelve gauge shotgun, a black Oakley zip-up hoodie, 7.62 by 39 ammunition, 9 millimeter ammunition, 40 caliber ammunition, several documents with the defendant's name on them, photographs of the defendant, documents with the name Shankequa McKnight on them, and a pair of blue Nike jeans which were located in the trash. During the course the SRT's search, Ms. Shankequa McKnight arrived at the residence. Ms. McKnight was served with a copy of the search warrant and affidavit.

The defendant argues that the search warrant was defective because it failed to state with particularity which apartment at 302 Boyles Avenue was to be searched.

Furthermore, the defendant argues that the warrant was executed without probable cause. The commonwealth contends that the warrant was proper on its face, and that the instant motion should be denied.

Where a motion to suppress has been filed, the burden is on the commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. DeWitt*, 530 Pa. 299, 301, 608 A.2d, 1030, 1031 (1992).

Under Pennsylvania Rule of Criminal Procedure 205, a search warrant shall be signed by the issuing authority, and shall: "...(2) identify specifically the property to be seized, and; (3) name or describe with particularity the person or place to be searched." *Pa.R.C.P.205*. The comment to *Rule 205* explains:

> Paragraphs (2) and (3) are intended to proscribe general or exploratory searches by requiring that searches be directed only towards specific items, persons, or places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description may suffice. *See Commonwealth v. Matthews*, 446 Pa. 65, 69-74, 285 A.2d 510, 513-14 (1971).

*Pa.R.Crim.P. 205*, comment. A practical, common sense approach should be taken in determining whether the place

to be searched is specified with sufficient particularity. *Commonwealth v. Carlisle*, 517 Pa. 36, 41, 534 A.2d 469, 472 (1987).

The defendant cites to *Commonwealth v. Carlisle* in support of his position. In that case, the defendant was arrested and charged with conspiracy and the operation of lotteries from her apartment. *Carlisle*, supra, at 39, 470. The search warrant contained only the address of the building and a description of the building itself, though the affidavit stated that the defendant had been operating out of apartment one. Supra, at 38, 470. Only the defendant's apartment was searched, although the building contained three apartments. Supra, at 39, 471. The defendant moved to suppress evidence seized during the search, arguing that the affidavit in support of the application for the search warrant did not establish probable cause and that the warrant authorized a search of the entire building, which was a broader search than could be justified by the probable cause on which it was based. Supra, at 39-40, 471. The trial court granted the defendant's motion, and the Superior Court reversed, holding that probable cause did exist and that the warrant was precise enough that a police officer would be able to tell which units he was authorized to search. Supra, at 40, 471.

The Supreme court noted that a search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the particular room or sub-unit to be

searched with sufficient definiteness to preclude a search of other units. *Carlisle*, supra, at 40, 471. However, the Supreme Court held that a search warrant should be construed along with the affidavit, rather than construing the search warrant alone. Supra, at 42, 472. In applying a practical, common sense approach, the court reasoned that the officers conducting the search would know which apartment was to be searched based on information provided by both the search warrant and the affidavit, rather than the search warrant alone. Supra, at 43, 472.

In *Commonwealth v. Kiessling*, the Superior Court held that a search warrant that misidentified the location of the premises to be searched in a multi-dwelling building was not invalid. *Commonwealth v. Kiessling*, 380 Pa. Super. 442, 552 A.2d 270 (1988). in *Kiessling*, the defendant was convicted for possession of cocaine, possession with intent to deliver cocaine, and possession of marijuana. *Id.* at 443, 272. The defendant appealed, maintaining that the search warrant was invalid because it described the apartment to be searched as located on the top floor, when in fact the defendant lived on the bottom floor of the building. *Id.* The defendant argued that a search warrant for a multiple-unit dwelling was invalid for lack of specificity where it failed to describe the particular room or sub-unit to be searched with sufficient definitiveness to preclude the search of other units. *Id.* at 444, 271.

The Superior Court rejected the defendant's argument, observing that traditional Fourth Amendment protections

are not violated where the error is minimal and is based on information that the police reasonably believed to be accurate. *Kiessling*, at 445, 272. The court noted that the officers who conducted the search realized the mistake on the warrant almost immediately, and became aware that the defendant's residence was in fact on the first floor of the building. *Id.* at 447, 273. The court concluded that the officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment. *Id.* at 447, 273, citing *Maryland v. Garrison*, 480 U.S. 79, 88, 107 S.Ct. 1013, 1019 (1987).

In *Commonwealth v. Kaplan*, 234 Pa. Super. 102, 339 A.2d 86 (1975), the superior court held that a search warrant directing a search of an apartment house occupied by a number of different tenants, which states the name of the person occupying the apartment to be searched is valid. In *Kaplan*, the defendant challenged the validity of a search warrant which described the premises to be searched as the third floor front apartment, when in fact the defendant's apartment was actually the third floor rear apartment of the building. *Id.* at 104, 87. The court held that the description of the premises in the warrant was sufficient to enable the police to search the correct apartment, despite the slight error. *Id.* at 105-06, 88; citing *Commonwealth v. Fiorni*, 202 Pa. Super. 88, 195 A.2d 119 (1963)(holding that it is not necessary to set forth the exact location of an apartment within a building in the search

warrant).

In the case sub judice, the search warrant itself describes the premises to be searched as a white duplex located at 302 Boyles Avenue. The search warrant also states that the entrance to the defendant's apartment was through the rear door. The affidavit of probable cause, however, notes that New Castle Police relied on information provided by Mr. Andrews, who stated that the defendant used the rear door when entering and exiting the residence. The search warrant must be construed in conjunction with the affidavit, rather than by itself, in determining whether New Castle Police had reasonable knowledge of which particular apartment within the building was to be searched. *Commonwealth v. Carlisle*, supra, at 43, 472.

The facts of the case sub judice are analogous to those within *Kiessling*, supra, and *Kaplan*, supra. Here, New Castle Police reasonably believed that the entrance to the defendant's apartment was located at the rear of the building. Sergeant Seelbaugh also testified that information provided by several individuals and photographs found on Facebook indicated that the defendant's apartment had a sharp tilted roof, which led them to reasonably believe that the apartment was located on the second floor of the building.

After making contact with what turned out to be the third floor's occupants, the SRT immediately realized the mistake and reevaluated their plan to execute the warrant. The SRT did not search the third floor apartment. After

locating the defendant's mail in a first floor mailbox, the SRT was able to ascertain which particular apartment within the building was the defendant's, and executed the search warrant.

Although the search warrant did not accurately describe which level of the building the defendant's apartment was located, it did particularly describe the person and place to be searched. The information provided to New Castle Police by Mr. Andrews and several other individuals was reasonably relied on and accurate to the extent that the defendant's apartment was in fact located at 302 Boyles Avenue. Furthermore, the search warrant specified that the items to be located were a 9 millimeter handgun, 9 millimeter ammunition, and a blue, zip-up hoodie. The general, sweeping searches that the Fourth Amendment and *Article 1, § 8* were enacted to proscribe are not present in this case. The building was not searched until the defendant's apartment was located. Once the SRT realized the mistake, they descended from the third floor of the building.

The evidence provided by the commonwealth indicates that New Castle Police had reasonably accurate knowledge of the location of the defendant's apartment and the items to be seized. This knowledge is supported by statements taken from Mr. Andrews and other individuals and was reasonably relied upon by New Castle Police. That the exact location of the defendant's apartment within the building at 302 Boyles Avenue was not identified does not

invalidate the otherwise valid search warrant.

The defendant also argues that there were no exigent circumstances present to excuse New Castle Police from being required to obtain another warrant. The defendant cites *Commonwealth v. Demshock*, 854 A.2d 553 (Pa.Super. 2004), arguing that exigent circumstances cannot be found where police create the exigent circumstances themselves. The defendant maintains that New Castle Police created any exigent circumstances when the SRT entered the third floor apartment and lost the element of surprise. However, since the court has determined that the warrant was valid and authorized the search of the residence at 302 Boyles Avenue, New Castle, PA, occupied by defendant is not necessary to determine if exigent circumstances authorized a search and seizure without a valid warrant.

Accordingly, the commonwealth has demonstrated by a preponderance of the evidence that New Castle Police were provided with reasonably accurate information about the location of the apartment occupied by defendant and the specific items to be located therein. That the New Castle Police initially and mistakenly believed that the defendant's apartment was located on the third floor of the building does when it was on the first floor, not invalidate the otherwise valid search warrant. Therefore, the defendant's motion for suppression must be denied.

## ORDER OF COURT

And now, February 1, 2013, for the reasons set forth

in the accompanying opinion of even date herewith, it is ordered, adjudged, and decreed that the defendant's motion for suppression of evidence is hereby denied.

The court notes that this case is on the February 2013 trial list.