J-S27045-16

2016 PA Super 109

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JORDAN ELIAS KORN, | |
| Appellee | No. 1528 MDA 2015 |

Appeal from the Order Entered August 18, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000427-2015

BEFORE:  SHOGAN and DUBOW, JJ., and STEVENS, P.J.E.[*]

DISSENTING OPINION BY SHOGAN, J.:                    **FILED MAY 25, 2016**

Because I conclude that the search in the case was overbroad, I am constrained to respectfully dissent.

My review reflects the following facts in this case.  On February 22, 2015, Trooper Eric Guido, of the Pennsylvania State Police, accompanied a confidential informant ("the CI") to Apartment 201 at 501 East Beaver Avenue, in State College.  The trooper and the CI conducted a controlled buy of Xanax pills from Aaron Murray, which took place inside of Mr. Murray's bedroom in a multiple bedroom apartment in this college town.  At the time of the controlled buy, Trooper Guido observed the door of Appellee's

_____

[*]  Former Justice specially assigned to the Superior Court.

bedroom, which was located at the end of the hallway from Mr. Murray's bedroom.

On February 25, 2015, Trooper Guido and the CI conducted a second controlled buy of Xanax pills from Mr. Murray. The second transaction took place in the back seat of Trooper Guido's vehicle. The next day, February 26, 2015, Trooper Guido sought a search warrant from Magisterial District Judge Carmine W. Pristia, Jr., and the warrant was issued on that day. The warrant listed the "specific description of premises and/or person to be searched" as follows:

> The Phoenix Apartment Complex, 501 East Beaver Ave., Apt #201 located in State College Boro, Centre County.

Commonwealth's Exhibit 1 at 1. In addition, the warrant specified the "name of owner, occupant or possessor of said premises to be searched" as "Aaron MURRAY." *Id*.

Prior to executing the warrant, Trooper Guido contacted employees of the Phoenix apartment complex for assistance in entry into the apartment. However, at no time did Trooper Guido inquire about the number of occupants of the apartment or the number of rooms in the apartment.

At the time of the execution of the search warrant, Jordan Elias Korn ("Appellee") was located in his back bedroom of the apartment, with the bedroom door locked. After requests from the executing officers that lasted at least five minutes, Appellee eventually opened his bedroom door. Officers then searched Appellee and discovered Xanax pills on his person.

Officers also searched Appellee's bedroom and recovered additional Xanax pills and cash. Appellee was arrested that day. He was charged with simple possession, possession with intent to deliver, and possession of drug paraphernalia.

On May 22, 2015, Appellee filed an omnibus motion to suppress all the physical evidence found as a result of the search. The suppression court held a hearing on July 13, 2015, at which only Trooper Guido testified. Thereafter, both Appellee and the Commonwealth filed briefs with the suppression court. On August 19, 2015, the suppression court filed an opinion and order that granted Appellee's motion to suppress and dismissed the charges brought against Appellee. The Commonwealth then filed this timely appeal.

The sole issue, as framed by the Commonwealth, is as follows:

Did the lower court err as a matter of law in granting [Appellee's] Motion to Suppress when the search of [Appellee's] room was constitutionally valid as part of the single-unit residence identified on the search warrant?

Commonwealth's Brief at 4.

The standard of review an appellate court applies when considering an order granting a suppression motion is well established and has been summarized as follows:

We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to

determine whether the factual findings are supported by the record. If so, we are bound by those findings. . . .

Moreover, if the evidence when so viewed supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings.

*Commonwealth v. Lindblom*, 854 A.2d 604, 605 (Pa. Super. 2004) (citations omitted). Moreover, I must note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).[1]

With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings.

_____

[1] On October 30, 2013, our Supreme Court decided *In re L.J.*, in which the Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *L.J.*, 79 A.3d at 1087. Prior to *L.J.*, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial." *Commonwealth v. Charleston*, 16 A.3d 505, 516 (Pa. Super. 2011) (quoting *Commonwealth v. Chacko*, 459 A.2d 311 (Pa. 1983)). *L.J.* thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing. In this case, Appellee's suppression hearing was held after *L.J.* was decided. Therefore, the rule announced in *L.J.* is applicable to the case at bar. *See L.J.*, 79 A.3d at 1089 (stating holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision"). I must note that the evidentiary record in this matter does not include any evidence or evidentiary items subsequent to Appellee's suppression hearing. Accordingly, there is no concern that we preclude subsequent evidence of record from appellate review as required under *L.J.*

- 4 -

> Only factual findings which are supported by the record are binding upon this court.

**Commonwealth v. Benton**, 655 A.2d 1030, 1032 (Pa. Super. 1995) (citations omitted). In addition, questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. **Commonwealth v. Freidl**, 834 A.2d 638, 641 (Pa. Super. 2003).

Further, Pennsylvania Rule of Criminal Procedure 581, which addresses the suppression of evidence provides, in relevant part, as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

Both the United States and Pennsylvania Constitutions prohibit "unreasonable searches and seizures." U.S. Const. Amendment IV; Pennsylvania Const. Art. 1, § 8.

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." **Schneckloth v. Bustamonte**, 412 U.S. 218, 236, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); **Commonwealth v. Blair**, 394 Pa. Super. 207, 575 A.2d 593, 596 (Pa. Super. 1990).

**Commonwealth v. By**, 812 A.2d 1250, 1254 (Pa. Super. 2002).

Also, under both state and federal constitutions, search warrants must be supported by probable cause. **Commonwealth v. Hoppert**, 39 A.3d 358, 361-362 (Pa. Super. 2012). Pennsylvania Rule of Criminal Procedure

203 addresses the requirements for the issuance of a search warrant and provides, in pertinent part, as follows:

**Rule 203.  Requirements for Issuance**

(B)  No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology.  The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

\* \* \*

(D)  At any hearing on a motion for the return or suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (B).

Pa.R.Crim.P. 203(B), (D).

In addition, Pa.R.Crim.P. 205 sets forth the requirements for the contents of search warrants, and provides the following, in relevant part:

**Rule 205.  Contents of Search Warrant**

Each search warrant shall be signed by the issuing authority and shall:

\* \* \*

(2) identify specifically the property to be seized;

(3) **name or describe with particularity the person or place to be searched**[.]

Pa.R.Crim.P. 205(2), (3) (emphasis added).  Furthermore, the comment to Pa.R.Crim.P. 205 includes the following explanation:

- 6 -

> *Comment:* Paragraphs (2) and (3) are intended to proscribe general or exploratory searches by requiring that searches be directed only towards the specific items, persons, or places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description may suffice. *See Commonwealth v. Matthews*, 446 Pa. 65, 69-74, 285 A.2d 510, 513-14 (1971).

Pa.R.Crim.P. 205 cmt. As our Supreme Court explained in **Commonwealth v. Carlisle**, 534 A.2d 469, 472 (Pa. 1987), the determination of whether an application for a search warrant identified the place to be searched with sufficient particularity requires a practical, common-sense approach.

When police search a multi-unit building, this Court has held the following:

> A search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity **if it fails to describe the particular room** or subunit to be searched with sufficient definiteness to preclude a search of other units. Where the description provided is precise enough to enable the officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity. Moreover, **a warrant directing a search of more than one living unit is valid only if there is probable cause that all are being used for the unlawful purposes involved**. Finally, the reviewing court must make a practical, commonsense decision whether the place to be searched has been specified with sufficient particularity.

**In the Interest of Wilks**, 613 A.2d 577, 579 (Pa. Super. 1992) (citations omitted) (emphases added). **See also Commonwealth v. Copertino**, 224 A.2d 228, 230 (Pa. Super. 1966) (stating that "[n]ormally, separate living

- 7 -

units of a multiple tenant building must be treated as if they were separate dwelling houses and probable cause must be shown to search each one").

Upon review of the certified record it appears to me that this matter is squarely on point with our decision in *Wilks* because (a) the affidavit of probable cause reflects that the drug transaction that occurred on February 22, 2015, took place in a bedroom into which Aaron Murray specifically escorted the CI and Trooper Guido, (b) Trooper Guido testified that the apartment "was a typical college apartment that I'm used to executing warrants on, common area, two bedrooms, bathroom, kitchen," N.T., 7/13/15, at 26, (c) the search warrant for the apartment specifically listed "Aaron Murray" as the owner, occupant or possessor of the premises to be searched, and (d) the police were specifically put on notice during the execution of the search warrant that the apartment actually contained multiple bedrooms which were capable of being secured from the common area and that there was another occupant, *i.e.*, Appellee, locked within a separate living area of the apartment. Thus, it cannot be said that this was a single unit household occupied or controlled by a single person, *i.e.*, Aaron Murray.

In an effort to overturn the decision of the suppression court, the Majority relies upon the Pennsylvania Supreme Court's decision in *Commonwealth v. Waltson*, 724 A.2d 289 (Pa. 1998), which I conclude is not on point. In *Waltson*, the police responded to a domestic dispute and

were met by a woman they did not know, and who had never given them information regarding drugs or drug trafficking. The woman informed them that Waltson, her boyfriend, was growing marijuana in the basement of their house. A search warrant was then issued based upon the girlfriend's statement. The police searched the entire residence and found marijuana growing in the basement and additional drugs and paraphernalia in other portions of the house.

Upon review, the issue in **Waltson** was specifically framed by our Supreme Court as follows:

> "whether **the search of an entire residence is barred** as overbroad pursuant to Article 1, Section 8 **where the affidavit of probable cause for the warrant references only a particular room within the residence**."

**Waltson**, 724 A.2d at 290 (emphases added). In reaching its ultimate ruling in **Waltson**, that the search of the entire single family house was permissible, our Supreme Court stated, "we conclude that . . . **in the search of a single unit house**, these [constitutional privacy] rights are satisfied where the specificity requirement is met." **Waltson**, 724 A.2d at 293 (emphasis added).

Instantly, upon review of the record I am left to conclude that, unlike **Waltson**, the place specified in the search warrant was not a single unit house, nor was there any evidence that the entire apartment was under the control of Aaron Murray. Rather, as previously mentioned, the facts show that the place searched was more akin to a multiple unit dwelling and, as

evidenced by Appellee being locked in a separate living area, certain portions of the premises were not under the control of Aaron Murray. Indeed, the trial court in this case made specific findings that the apartment at issue was a multi-occupancy apartment. Trial Court Opinion, 8/19/15, at 1, 4.

Many college students live in multi-occupancy units and have individualized privacy interests. Because the affidavit in this case only established probable cause as to the areas accessed and controlled by Mr. Murray, and because the police were put on notice that there was another bedroom occupied by at least one other person, I am of the opinion that the search was overbroad. Therefore, I respectfully dissent.