Commonwealth *v.* Johnson, Appellant.

Submitted March 28, 1974.   Before WATKINS, P. J.,
JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and
SPAETH, JJ.

*I. B. Sinclair* and *Clarence D. Bell, Jr.,* for appellant.

*Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 21, 1974:

Appellant contends that the search warrant which was issued for certain premises, at which a gambling operation was suspected, was defective since it did not specify which of a number of apartments at that location were to be searched. In addition, he contends that the arrests which arose out of the search of the apartment should be likewise declared illegal.

Based on tips by an informant and a three-day surveillance of the premises at 1116 West Third Street, in Chester, police obtained a search warrant for a building at said address, "under the control of Johnnie Carter, a/k/a John Johnson", who was personally known by the affiants as a "colored male about forty-five to fifty, dark-complected, medium build, wearing glasses and sport coat." At the time of the suppression hearing, it was revealed that said building was in fact a converted three-story row house, comprised of numerous apartments. Officer Smith testified that the informant had told him and he had orally communicated to the issuing magistrate that the suspected gambling operation was "down at the end of the hall on the first-floor."

Police raided the premises, and at the end of the hallway on the first floor, they came upon an apartment within which they found a variety of gambling devices and paraphernalia. They then arrested the four occu-

pants of the apartment and "frisked" them, finding number slips upon Robert Martin and William Sewell. They searched the appellant and found only a sum of money. Prior to the arrest, appellant had been standing in the kitchen apparently watching the World Series. Shortly after the arrest, appellant allegedly made an incriminating statement. The fourth occupant, an unnamed female, was eventually released by the police. On his way to the police station, Officer Smith testified that the appellant offered to bribe him if he let him go. Appellant was charged with a number of lottery and gambling charges, as well as corrupt solicitation of a police officer. The case was tried without a jury, and the appellant was found guilty of lottery and traffic in lottery tickets, setting up a gambling establishment, procuring persons to gamble, enticing persons to gamble and corrupt solicitation.

After reviewing the record of the case, I must conclude that the search warrant was constitutionally defective. In a case nearly identical on its facts as the instant one, Judge JACOBS, delivering the Majority Opinion, held, in *Commonwealth v. Copertino,* 209 Pa. Superior Ct. 63, 224 A. 2d 228 (1966), that both the United States and Pennsylvania Constitutions prohibited the issuance of a search warrant for an entire building wherein there existed separate living units, saying at 68: "Normally, separate living units of a multiple tenant building must be treated as if they were separate dwelling houses and probable cause must be shown to search each one." In that case, police obtained a search warrant of a building wherein they suspected that lottery and gambling activity was taking place. Having no reason to suspect that the entire building was being used for an illegal purpose, the Majority held that there was "no probable cause . . . to support a warrant commanding the search of the entire building, and the warrant which commanded that

search was invalid. The fact that only the first floor was actually searched will not validate the warrant which was illegal when issued. The validity of the warrant is dependent upon the facts shown at the time of its issuance." 209 Pa. Superior Ct. at 69.

Since it appears from the notes of testimony that the suspected premises contained three living levels, and information as to the locus of the activity was confined to one specific portion of the premises, a warrant issued for the search of the entire premises, however mistakenly described, was defective.

At the suppression hearing, Commonwealth witness admitted that they knew Johnnie Carter, a/k/a John Johnson, and that that individual was not the same person as the appellant. Nowhere in the search warrant nor in supporting affidavits or complaints is the appellant mentioned as engaged in illegal activity at the same premises. He was not the owner of the building, nor was it ever established that he was anything more than a visitor at the apartment. In the instant case, the arrest and any subsequent evidence obtained by a search of the appellant's person or from statements made by him could not have been obtained except by virtue of the police raid pursuant to the defective search warrant. In short, but for the illegal search, appellant would not have been arrested. In *Wong Sun v. United States*, 371 U.S. 471, 488 (1963), the Supreme Court of the United States enunciated the "fruit of the poisonous tree" doctrine excluding all evidence which was "come at by exploitation of that illegality or instead by means [in]sufficiently distinguishable to be purged of the primary taint."

With respect to the corrupt solicitation conviction, however, we believe the attempted bribery of a police officer was a separate criminal act, not resulting from the passive atmosphere from which the "fruits" of the crimes obtained from the illegal search. Though it may

be argued that the illegal search yielded the seized evidence which in turn led to the arrests which in turn provided the framework for the alleged bribery, such an extension of the *Wong Sun* case was not intended.

The conviction at No. 63, March Sessions, 1972, is affirmed. The remaining convictions are reversed, the sentences vacated, and appellant is ordered discharged.

WATKINS, P. J., CERCONE and VAN DER VOORT, JJ., dissent.