COMMONWEALTH of Pennsylvania, Appellant

v.

Brian SIMPKINS, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 6, 2011.

Filed Jan. 20, 2012.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Edward C. Meehan, Jr., Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., BOWES, and OLSON, JJ.

OPINION BY BOWES, J.:

This Commonwealth appeal is from the August 25, 2010 order suppressing a gun discovered in a room rented by Appellee, Brian Simpkins,[1] in a single-family dwelling. We reverse and remand.

On appeal from an order suppressing evidence, we "consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings." *Commonwealth v. Baez*, 21 A.3d 1280, 1282 (Pa.Super.2011). On the other hand, the conclusions of law reached by the suppression court "are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." *Id.*

In the present case, the defense presented no evidence or witnesses. We therefore examine the proof adduced by the Commonwealth to determine if the record supports the factual findings rendered by the suppression court herein. Philadelphia Police Detective William Knecht was involved in the investigation of guns stolen during a burglary at a gun store in Ephrata, Pennsylvania. He secured a search warrant for 4513 N. 13th Street, Philadelphia, based upon the following information. On February 24, 2010, Philadelphia police arrested Bradley Robinette, who was in possession of several of the guns stolen during the burglary. Robinette told police that he had purchased the guns from the person who committed the burglary and that he had sold other stolen weapons in the Philadelphia area. Robinette specified that he sold at least two of the stolen firearms to a man he knew by the initial "P" who lived at a house located at 4513 N. 13th Street. Police took Robinette to the address, where he confirmed that he sold stolen guns at that location and also stated that he was familiar with the house because he previously purchased marijuana there. Detective Knecht conducted a computerized search of records pertaining to the property and discovered that it was zoned as a single-family row house owned by Advanced Real Estate. The search warrant therefore identified the place to be searched as a single-family house located at 4513 N. 13th Street.

Detective Knecht testified as follows regarding the events surrounding execution of the warrant on February 26, 2010. There was one door to the residence, and there may have been a doorbell but it was not operational because the officer knocked on the door. Detective Knecht continued that he did not recall any mailboxes being on the property, and there was one utility meter at the rear. From the outside, the property appeared to be a

1. Appellee has failed to file a brief for purposes of appeal.

single-family dwelling. N.T. Trial (Jury) Vol. 1, 8/25/10, at 17.

A female answered the door and allowed Detective Knecht and other officers who were assisting him into the house. The interior was not divided into apartment units. Specifically, the first floor contained a vestibule, dining room, living room, and kitchen. In the vestibule, stairs led to the second floor, which contained three bedrooms and a bathroom. No door separated the first and second floor. *Id.* at 18.

While other officers were involved in examining other parts of the building, Detective Knecht searched the middle bedroom on the second floor, where he discovered a .40 caliber Smith & Wesson handgun. Detective Knecht also found Appellee's driver's license and "a couple of pieces of mail in the name of [Appellee]." *Id.* at 30. The serial number from the gun established that it was stolen from the gun store in Ephrata.

Detective Knecht indicated that, following the search, he conducted an informal interview of the unidentified female who opened the door. She told the officer that she "used to live in the property there by herself," and that she rented it from another male. *Id.* at 24. The woman said that two other people had recently moved into the home, were paying rent, and used two bedrooms on the second floor. Detective Knecht later confirmed with the owner of the house that the row house had been rented to one woman until just prior to the search, when the landlord had permitted two men, including Appellee, to rent bedrooms on the second floor.

Detective Knecht was questioned at the hearing as to when he interrogated the female occupant of the row house. He stated unequivocally that the interrogation did not occur when she opened the door, but only after the search was conducted.

Detective Knecht noted that he first came in contact with the woman when she opened the door and permitted police into the residence. He was asked: "At that point did you conduct an informal discussion with her about who was residing on the property?" *Id.* at 25. The witness responded, "No we did not." *Id.* Officer Knecht explained, "I did not talk to her until after the search was done." *Id.* at 26. During the discussion with the female, he showed her Appellee's driver's license, and she identified him as the man who rented the room where the gun was recovered.

Based on this proof, the suppression court inexplicably concluded that the row house was divided into apartments. It stated: "In the present case, police officers were in the process of executing a valid warrant for a single family house. When they arrived at the scene, they learned that this house, though zoned single family, was actually a rental home divided into several apartments." Trial Court Opinion, 5/31/11, at 5. Despite the fact that Detective Knecht clearly delineated that he interviewed the woman after the search, the suppression court also concluded: "When Detective Knecht entered the house, a woman came up to him and explained that she rented a room in the house, and that three men also rented rooms." *Id.* After noting that the warrant "did not specify any specific apartment within the house to be searched," *id.* at 3, the suppression court concluded that the search was infirm under our decision in *Commonwealth v. Johnson,* 229 Pa.Super. 182, 323 A.2d 26 (1974). In *Johnson,* we noted that "both the United States and Pennsylvania Constitutions prohibited the issuance of a search warrant for an entire building wherein there existed separate living units," and that "separate living units of a multiple tenant building must be treated

as if they were separate dwelling houses and probable cause must be shown to search each one." *Id.* at 28.

■ In the present case, the suppression court's factual finding that the row house was divided into apartments is unsupported by the record. The house was zoned as a single-family dwelling and, from the exterior and interior, nothing indicated that it was anything other than such a structure: there was one door, possibly one doorbell, no apparent mailboxes, and one utility meter. The interior of the building was not divided. The downstairs had a living room, dining room, and kitchen, and the second floor, which was not closed off from the first floor, had bedrooms and a bath. The female tenant and landlord both stated that the bedrooms were being rented and not that the structure had been divided into apartments.

In rendering the factual conclusion that the house had apartments, the court focused on the fact that, during cross-examination, Detective Knecht admitted that he was aware, from personal experience, that "the way the house is zoned is not necessarily the way the house is being used[.]" *Id.* at 21. The court also noted that the detective could not recall the number of mailboxes and whether there were multiple doorbells. However, every fact of record demonstrates that the row house in question was in fact being used precisely how it was zoned, as a single dwelling. Officer Knecht did not state that there was more than one mailbox to the house; he said he did not recall seeing any mailboxes. He testified that there may have been a single doorbell to the house but that it was not operational. He said unequivocally that there was a single utility meter to the dwelling. Nothing of record substantiates that the outside of the row house would have provided some type of notice to the police that it was an apartment building,

which, indeed it was not since the interior was not, in fact, separated into apartments. Appellee presented no countervailing proof that Officer Knecht's recollection was erroneous and that the house had multiple mailboxes and doorbells. Hence, the suppression court's suggestion that the house had been configured into apartments cannot be sustained.

■ The suppression court's factual finding that Detective Knecht knew before he searched the house that the bedrooms were being separately rented is similarly unsupported by the record. He testified that he did not discover this fact until after he searched the residence. Appellee presented no evidence that police should have been alerted to the existence of multiple tenants, due to the presence of multiple doorbells and mailboxes or numbers on the doors.

Since the record demonstrates that this row house was not divided into separate apartments and since police were not aware that Appellee was renting his bedroom until after the search, the suppression court's ruling cannot be sustained. Rather, *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), applies. Therein, police obtained a warrant to search the third floor of a building, which was described as a single apartment. Police were unaware until after finding contraband in defendant's apartment that the third floor was sub-divided into two separate apartments; the defendant's apartment was not the one for which police had probable cause to search. Police discontinued their search after discovering the single dwelling unit was separated, but, as noted, already had discovered contraband in the defendant's living quarters. The issue presented was whether that contraband should have been suppressed.

The United States Supreme Court first found that when "the police applied for the

warrant and when they conducted the search pursuant to the warrant, they reasonably believed that there was only one apartment on the premises described in the warrant" and that it was only after the search was conducted and certain evidence seized that they realized that there were two apartments on the third floor. *Id.* at 85, 107 S.Ct. 1013. The Court observed that "if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of [the building], they would have been obligated to exclude [defendant's] apartment from the scope of the requested warrant. However, we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued." *Id.* (footnote omitted).

The Supreme Court ruled that "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing [authority]." *Id.* The Court further held that police were not obligated to discontinue their search and obtain a more specific warrant until they either knew or should have known of the existence of the separate living quarters. It concluded that the conduct of police and scope of their search "were based on the information available as the search proceeded. While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." *Id.* at 87, 107 S.Ct. 1013 (footnote omitted).

The Supreme Court opined that the "validity of the search of [the defendant's] apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable. Here it unquestionably was. The objective facts available to the officers at the time suggested no distinction between" the two apartments. *Id.* at 88, 107 S.Ct. 1013. *See also Commonwealth v. Andujar*, 264 Pa.Super. 326, 399 A.2d 1074 (1979) (warrant for multi-unit household valid since police had no reason to know building was actually being used as multi-unit dwelling); *accord Commonwealth v. Davis*, 331 Pa.Super. 285, 480 A.2d 1035 (1984).

This line of cases applies herein. Police knew that stolen guns had been sold to an occupant in the row house, which was zoned as a single-family dwelling. Nothing existed either on the exterior or interior of the building to suggest that it was anything other than a single-family dwelling, and there was only one person present when the warrant was executed. The female opened the door and permitted the officers to search the house prior to informing them that the bedrooms were being rented by separate individuals. Since there was nothing to lead the officers to believe that the building was being used as a rooming house, we reject the suppression court's application of *Johnson* herein. Rather, the reasoning of *Garrison* applies.

Order reversed. Case remanded. Jurisdiction relinquished.