534 A.2d 469

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Christine CARLISLE, Appellant.**

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Loretta MARINACCI, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 21, 1987.

Decided Dec. 9, 1987.

38

Raymond Radakovich, Pittsburgh, for appellants.

Robert Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Justice.

On May 9, 1983 detectives of the Pittsburgh Police Department, acting on information that an illegal lottery operation was being conducted, applied for a search warrant for the following residence, as described on their application for a search warrant:

> 9935 Frankstown Rd. Penn Hills Pa. This is a two story frame house with red and grey shingles and ceder [sic] shakes on front, white trim and front porch.

This information appears on a one-page form which serves multiple functions. It is an application for search warrant, a form on which the affidavit in support of the application is written, and, after the application is approved, the form, which contains the affidavit, becomes the search warrant itself. The description of place mentioned above appears in a box near the top of the form which contains the following directions:

> SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSONS TO BE SEARCHED (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc):

The affidavit in support of the application for a search warrant stated:

> Your affiants have received information from a reliable informant who has provided information in the past that has resulted in the arrest of Thomas Morrison in Feb. 1981 and also the arrest and conviction of Neil Harrington in July 1981 for lotterys.
>
> This informant has stated that he plays numbers with an actor known as Bud by calling the number 241–1966 or 241–1967. He states that he calls these numbers at various times during the day. He also states that he has placed number bets with the actor as recent as 5–9–83. The informant states that he only knows the actor as Bud.
>
> Dets. from the Vice Control Section checked the above numbers and found that 241–1966 goes to Sue Fletcher, 9935 Frankstown Rd. Penn Hills, *1st fl. apt 1.* The number 241–1967 is listed to Carol Sheehan *of the same address and apartment.* These numbers were checked with Bell Telephone Security.
>
> Dets. from the Vice Control Section called these numbers on verious [sic] occasions during the past week and found them usually busy and when someone did answer it was on the first ring. The affiants have been assigned to the Vice Section for aprox 5 years and the above pattern is consistent with a numbers operation.

(Emphasis added). A search warrant was issued based upon probable cause to believe that lottery materials would be found at this address, and later that day, a warranted search was conducted at Apartment Number One, 9935 Frankstown Road. Seized were various items used in the operation of a lottery. Only Apartment One was searched, although the building contained three apartments.

Appellants herein were arrested and charged with conspiracy and the operation of lotteries. They moved to suppress evidence seized during the search and the Court of Common Pleas granted the motion to suppress on the grounds that the affidavit in support of the application for the search warrant did not establish probable cause and

that the warrant authorized the search of an entire building, which was a broader search than could be justified by the probable cause on which it was based.

Superior Court reversed, 501 A.2d 664, holding that probable cause did exist and that the warrant was precise enough that a police officer would be able to tell which units he was authorized to search. We granted allocatur to address the narrow question of whether the search warrant in this case was drawn with sufficient particularity as to the place to be searched.

Superior Court correctly stated the general requirement of particularity of place in a search warrant as follows:

> The general rule is that "a search warrant directed against a[n] . . . apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units." 68 Am.Jur.2d *Searches and Seizures* § 77 (1973).

The evil to be prevented is the search of other apartments where there is no legal basis for police intrusion.

■ Rule 2005 of the Rules of Criminal Procedure provides, in pertinent part:

> Each search warrant shall be signed and sealed by the issuing authority and shall:
>
> \* \* \* \* \* \*
>
> (c) Name or describe with particularity the person or place to be searched;
>
> \* \* \* \* \* \*
>
> (g) Certify that the issuing authority has found probable cause based upon the facts sworn to or affirmed before the issuing authority by written affidavit(s) attached to the warrant.

Pa.R.Crim.P. 2005. These requirements tell us two important things: first, that the search warrant must describe the person or place to be searched with particularity; and second, that a search warrant shall have the supporting affidavit attached to the warrant.

Since the rules do not prescribe any particular form for the written affidavit in support of the warrant, it is possible that the affidavit may be on a separate sheet of paper which is then attached to the warrant, or, as in this case, that the affidavit and warrant appear on a single sheet of paper.* In either case, however, the question which arises is whether the affidavit, which must in some form be attached to the search warrant, may be used to augment the description of place listed on a search warrant. Analytically, the two most obvious approaches to this question are either to construe the affidavit and the warrant together, or to construe only the warrant, without regard to the affidavit. In this case, if the two writings were construed together, the place would be described with sufficient particularity, since the affidavit plainly states that the phones suspected of being used to conduct a lottery were located in Apartment One, not elsewhere. If the documents are to be construed separately, however, the warrant would fail for lack of particularity since the box on the form, separate and apart from the affidavit, where the address is filled in does

---

* Pa.R.Crim.P. 2006 sets forth the requirements of the contents of an application for a search warrant:

> Each application for a search warrant shall be by written affidavit(s) signed and sworn to or affirmed before an issuing authority, which affidavit(s) shall:
>
> (a) State the name and department, agency, or address of the affiant;
>
> (b) Identify specifically the items or property to be searched for and seized;
>
> (c) Name or describe with particularity the person or place to be searched;
>
> (d) Identify the owner, occupant, or possessor of the place to be searched;
>
> (e) Specify or describe the crime which has been or is being committed;
>
> (f) Set forth specifically the facts and circumstances which form the basis for the affiant's conclusion that there is probable cause to believe that the items or property identified are evidence or the fruit of a crime, or are contraband, or are otherwise unlawfully possessed or subject to seizure, and that these items or property are located on the particular person or at the particular place described;
>
> (g) If a "nighttime" search is requested (i.e., 10 p.m. to 6 a.m.), state additional reasonable cause for seeking permission to search in nighttime.

not contain any reference to Apartment One, but instead appears to authorize a search of the entire building.

■ In *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), we decided that the "totality of circumstances" test articulated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), meets the requirements of Article I, Section 8 of the Pennsylvania Constitution for analyzing probable cause for search warrants based on information received from confidential informants. This case does not concern probable cause, but it is related to the decisions in *Gray* and *Gates* in that those cases adopt the general view of warrants that they are to be interpreted in a common-sense fashion, not in a hypertechnical fashion. As the *Gates* Court stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... [462 U.S.] at 238–39, 103 S.Ct. at 2332.

Cited in *Commonwealth v. Gray*, 509 Pa. at 484, 503 A.2d at. 925. We believe that the requirement of a "practical, common-sense" approach should apply also to the question raised in this case, whether the place to be searched is specified with sufficient particularity.

■ An argument against holding that the affidavit and the "Description of Premises" box on the warrant are to be construed together is the fear that the police officers who conduct the search will be different from those who wrote the affidavit and that the officers conducting the search will be unaware of what is in the affidavit. We believe this argument is without merit. Even if the police who conduct the search are different from the officers who got the warrant, it is inconceivable that those who conduct the search will not read the affidavit in order to learn as much as possible about the possible dangers within the premises they are about to search. And if police officers unfamiliar

with the investigation are likely to read the affidavit and thereby know where they are authorized to search, those familiar with the investigation, *a fortiori*, will know where the items to be searched for are thought to be located and where they are authorized to search.

Applying the "practical, common-sense" rule of *Gates* and *Gray* to this case, it is our view that the police officers conducting the search in this case would be aware of the exact location to be searched. They knew that a suspected lottery operation was being conducted at 9935 Frankstown Road by use of telephones which were located in Apartment One at that address. Common sense suggests that this information does not authorize a search of Apartments Two or Three, and, in fact, the only search conducted was a search of Apartment One. Had any location other than Apartment One been searched based on the affidavit in this case, any items seized from other locations would have been suppressed as having been seized outside the authority of the warrant.

■ Of course, one of the concerns lurking beneath the surface of search and seizure cases is not merely whether the evidence seized will be suppressed, but also whether the search and seizure is a ruse, whether it is being used as an instrument of government oppression. Where a search and seizure is conducted in the absence of probable cause or in general, not specific locations, even if seized evidence is suppressed, the life and energies of ordinary people may be seriously disrupted by having to conduct a defense of charges filed against them based on such groundless and illegal searches. We are ever watchful to prevent this from happening, and we have no desire to establish precedent which will in the future permit such searches to be conducted. In short, we are aware of the possibility that the government may act in bad faith and use its enormous powers to intrude where it should not into the private lives of our people. However, having said that, we do not see such an abuse in this case. Rather, what appears to have happened is that the police officer applying for the warrant inadvertently omitted the apartment number from the box

on the form which called for it. Were there reason to believe that this omission was not inadvertent, or were there reason to believe that police officers conducting the search would not reasonably know where the search was to be conducted, our view of this case would be quite different. As it is, we believe that Superior Court was correct in upholding the validity of the warrant.

Affirmed.

HUTCHINSON, former J., did not participate in the decision of these cases.

McDERMOTT, J., has filed a concurring opinion which LARSEN, J., joined.

NIX, C.J., concurs in the result.

McDERMOTT, Justice, concurring.

I join the majority in holding that as a matter of "practical common sense" the description in this warrant affidavit may be read to identify the location to be searched. That is all we were asked and all I think we should answer. The majority proffers solutions for issues not now before us. What might be upon other facts or similar situations can only be advisory, which advices often prove illusory.

LARSEN, J., joins this concurring opinion.