**[J-39-2019] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 45 MAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court at No. 1656 MDA 2016 dated |
| | : | February 13, 2018 Affirming the |
| v. | : | Judgment of Sentence dated May 10, |
| | : | 2016 by the Cumberland County |
| | : | Court of Common Pleas, Criminal |
| DYLAN SCOTT TURPIN, | : | Division, at No. CP-21-CR-0000623- |
| | : | 2015 |
| Appellant | : | |
| | | ARGUED: May 15, 2019 |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                    **DECIDED: September 26, 2019**

The Majority holds that under the Pennsylvania Constitution, an individual has no

protected reasonable expectation of privacy in his private bedroom if he shares a home

with other unrelated individuals. Majority Op. at 21. In one sentence, the Majority curtly

explains its disregard for our Constitution's recognition of the fundamental right to privacy:

"We recognize appellant had a reasonable expectation of privacy in his bedroom but …

this expectation of privacy does not transform the single family townhouse described in

the warrant into a multi-unit dwelling." *Id.* at 20 (internal citation omitted). With its opinion,

the Majority has reduced the analysis of the warrant requirement of Article I, Section 8[1]

---

[1] "The people shall be secure in their persons, houses, papers and possessions from
unreasonable searches and seizures, and no warrant to search any place or to seize any
person or things shall issue without describing them as nearly as may be, nor without

to a simple application of zoning law concepts without any consideration for what our Constitution is intended to protect – the privacy rights of individuals.

Our constitutional law is generally developed as we consider cases involving individuals who have been convicted of crimes. But our holdings define the scope of the protections from governmental intrusions to which all Pennsylvanians are entitled. The Majority's holding profoundly impacts young adults who share a home to economize early in their careers or while in college; adults in their golden years who, by virtue of being widowed or divorced, choose shared living arrangements to maintain a standard of living or for companionship; and adults who, because of financial constraints, must share the cost of a home in order to survive. To hold that they have no rights to privacy in their separate bedrooms, in contrast to those who have the wherewithal to live in a separate residence, is unsupportable, particularly where the driving rationale for this dichotomy is the Majority's overriding concern for the convenience of law enforcement. *See* Majority Op. at 20-21. This rationale is perverse since protection from unreasonable government intrusion is the precise reason for Article I, Section 8.

Although police had no probable cause to connect Dylan Scott Turpin to the sale of drugs, the Majority holds that police could permissibly search his private bedroom because there was probable cause to suspect that his housemate, Benjamin Irvin, was selling drugs. Despite recognizing the greater privacy protections that our Constitution

---

probable cause, supported by oath or affirmation subscribed to by the affiant." Pa. Const. art. I, § 8.

affords to individuals under Article I, Section 8 over that of the Fourth Amendment,[2] as well as the expectation of privacy that Turpin enjoyed in his private bedroom, the Majority nonetheless reaches this conclusion simply because the search conducted was of a single-family home.[3] Majority Op. at 20. As stated, in my view, the constitutional rights of individuals do not depend upon, and cannot be limited by, the zoning laws that categorize the structure in which they reside. Rather, I would conclude that where, as here, police are aware that the residence to be searched is shared by unrelated adults, the Pennsylvania Constitution requires that the affidavit of probable cause expressly include the basis for probable cause to search the area of the home occupied exclusively by a person other than the target of the warrant.

The law is clear that if a person has an expectation of privacy in a particular area, police generally must first obtain a warrant, supported by probable cause, to search the area. *Commonwealth v. Loughnane*, 173 A.3d 733, 741 (Pa. 2017). Pursuant to Article I, Section 8 of the Pennsylvania Constitution, "no warrant to search any place … shall issue without describing them **as nearly as may be**, nor without probable cause." Pa. Const. art. I, § 8 (emphasis added). Based on the emphasized language, we require the description of the place to be searched, both in the warrant application and in the warrant itself, "to be as particular as is reasonably possible." *Commonwealth v. Grossman*, 555 A.2d 896, 899 (Pa. 1989); *see also* Pa.R.Crim.P. 205(A)(3), 206(3) (requiring the

---

[2] It is pertinent to note that there is no discernable distinction between the rights defined by the Majority in this case under Article I, Section 8 and the Fourth Amendment.

[3] I do not address the Majority's analysis under the Fourth Amendment, *see* Majority Op. at 12-15, as I conclude that the decision cannot be sustained under the Pennsylvania Constitution.

application for a search warrant and the warrant itself "describe with particularity the person or place to be searched").

As our Court has held, the "as nearly as may be" language sets us apart from the Fourth Amendment to the United States Constitution and provides greater privacy protections to our citizens than does the federal charter. *Grossman*, 555 A.2d at 899 (stating that the language requiring the description to be "as nearly as may be" in Article I, Section 8 "is more stringent than that of the Fourth Amendment, which merely requires particularity in the description") (footnote omitted).

> [Pursuant to Article I, Section 8,] a warrant must describe the place to be searched … **with specificity**, and the warrant must be supported by probable cause. The place to be searched must be described "precise enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and **where probable cause exists to support the search of the area so designated**, a warrant will not fail for lack of particularity.

*Commonwealth v. Waltson*, 724 A.2d 289, 292 (Pa. 1998) (emphasis added; internal citation omitted).

In other words, the warrant must specifically describe the place to be searched, and there must be probable cause to support the search of that place. Furthermore, this Court has long recognized that "a search warrant directed against a … multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units." *Commonwealth v. Carlisle*, 534 A.2d 469, 471 (Pa. 1987). The intent behind this requirement is to prevent a search, without probable cause, of other apartments or units. *Id.* Although *Carlisle* involved a multiunit apartment building, this statement of the law is no less applicable to the circumstances currently before this Court,

as it pertains to the search of a person's private living quarters, where he has a reasonable expectation of privacy, and for whom the police do not have probable cause to suspect involvement in criminal activity.

In the case at bar, the affidavit of probable cause supporting the issuance of the warrant indicates that police were aware that Turpin lived in the townhouse located at 105 E. Green Street with Irvin. Affidavit of Probable Cause at 2. The police admittedly did not have probable cause to suspect Turpin's involvement in criminal activity. Nonetheless, police sought and obtained a warrant for the entirety of the residence. Upon arriving at the home to execute the search warrant, Turpin identified his bedroom to police and informed them that he kept the door to his bedroom closed when he was not home and that Irvin was not permitted to enter his bedroom without permission. Police searched Turpin's bedroom anyway. Under these circumstances, the warrant lacked the requisite specificity under Article I, Section 8, and police lacked probable cause to search Turpin's bedroom, rendering the search illegal and the items seized subject to suppression.

The Majority justifies the search because Irvin could have frustrated law enforcement efforts by hiding his drugs in Turpin's room. *See* Majority Op. at 20-21. I find this argument unpersuasive, as Irvin could have hidden his drugs anywhere, including at an entirely separate location. Moreover, if that is the basis for allowing the search of a private bedroom of a person police have no probable cause to believe is involved in the sale of drugs, then I agree with Turpin's argument that Irvin, and not Turpin, should have been charged with the drugs found in Turpin's room. *See* Turpin's Brief at 21.

The Majority's reliance on *Waltson* to conclude that the search of Turpin's room was permissible is not warranted. *See* Majority Op. at 20. The Majority acknowledges

that "*Waltson* is not on all fours with the present scenario[ as] the house at issue in *Waltson* was occupied by only one individual while the house at issue here was occupied by multiple unrelated individuals." *Id.* at 19. In fact, not only is *Waltson* not controlling, it does not even remotely address the issue presented here – unrelated individuals with distinct privacy interests in the same home. As the Majority recognizes and as stated above, Turpin had a reasonable expectation of privacy in his bedroom, which he kept closed and did not allow his roommate to access without permission. *Id.* at 20.

I further disagree with the Majority's reliance on the Superior Court's decision in *Commonwealth v. Korn*, 139 A.2d 249 (Pa. Super. 2016), to support its conclusion. *See* Majority Op. at 19-20. In *Korn*, police had probable cause to suspect that Aaron Murray was selling drugs out of his bedroom in an apartment located in State College, Pennsylvania but police were unaware that Murray had a roommate and had no probable cause to suspect his involvement in any crimes. They obtained a search warrant for the entire apartment, listing Murray as the sole occupant of the apartment. Upon executing the warrant, however, police learned that Jordan Korn also lived in the apartment, and found him in a separate bedroom behind a locked door. When Korn opened the door, police searched him and recovered drugs from his person. Police proceeded to search his bedroom, ultimately locating a key that unlocked a desk safe, revealing pills packaged for sale, drug paraphernalia and a large amount of United States currency.

The Superior Court majority reversed the lower court's suppression order, relying on *Waltson* for the proposition that because Korn and Murray lived together in a single residence, police could permissibly search any room of the apartment for drugs. *Korn*, 139 A.3d at 256. The Superior Court found that because Korn's bedroom did not have a

deadbolt, key entry, separate mailbox, private entrance or address, it did not constitute a "separate living unit," as found by the suppression court, but instead was part of the single-family residence, and thus properly searched by police. *Id.* at 254, 256.

*Korn* is not on point because unlike in the case at bar, when obtaining the warrant, the police officers in were not aware that the home was shared by an individual other than the target. The Majority draws from *Korn* its indicia of what constitutes a separate living unit. It is absurd to hinge a finding that a house is a privacy-right-protected multiple occupancy structure on whether a resident mounted a mailbox or deadbolt outside of his bedroom door.[4] Few, if any, single-family homes have separate mailboxes or deadbolts on bedroom doors or private entrances to individual bedrooms. Of course, all of this is irrelevant since, according to the Majority, even deadbolts and/or locks on one's private bedroom will not assure that an individual's bedroom is a private sanctuary free from government intrusion. Majority Op. at 15 n.7. The Majority's decision therefore effectively eliminates the Article I, Section 8 rights of anyone who shares a single-family home with another unrelated adult, allowing their privacy to be freely invaded based solely on the existence of probable cause that their housemate may have committed a crime.

As such, the Majority's decision discriminates against those who choose not to live alone and those who cannot afford to live in their own separate home. They are not entitled to the same constitutional protection of their privacy interests as those who choose to or have the means to live by themselves. As aptly observed by the Supreme

---

[4] In fact, many apartment complexes do not have mailboxes outside of each unit, but have an area for mail delivery in an entirely separate location in the building. Yet a warrant is unquestionably overbroad if it does not state, with particularity, the specific apartment to be searched. *Carlisle*, 534 A.2d at 471.

Court of Iowa, "[I]t is not unusual to see a group of unrelated single persons living together and sharing expenses. We do not believe that when individuals decide on this type of living arrangement, they believe they are giving up the right to privacy in their personal space." *State v. Fleming*, 790 N.W.2d 560, 567 (Iowa 2010). In such circumstances, there are common spaces shared by all residents, "but the individual bedrooms remain private," and this is a "social norm" that is "well established." *Id.* A person should not be penalized with the loss of privacy rights for the choice or necessity of living with other, unrelated adults.

The fact that the search occurred inside a structure typically zoned as "single-family" is wholly irrelevant to this constitutional discussion. Even the United States Supreme Court has stated that the Fourth Amendment (which decidedly provides less protection to a person's individual privacy rights) "protects people, not places" and a person's expectation of privacy. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). "[O]fficial intrusion" into a place where a person has an expectation of privacy, i.e., "one that society is prepared to recognize as reasonable, … requires a warrant supported by probable cause." *Id.*

The Majority's holding is particularly jolting in light of the facts of the case before us. When the police applied for the warrant at issue, the affidavit of probable cause made clear that the police were aware, based on their three months of surveillance, that two individuals, one of whom was Turpin, resided or at least frequently stayed at the residence shared by Irvin, the target of the investigation. Affidavit of Probable Cause at 2. Indeed, Turpin was referred to as an "occupant" of the residence in the affidavit of probable cause. *Id.* at 2-3. It is also clear (in fact, admitted) that the police did not have probable cause to

establish that Turpin was engaged in criminal activity.  *See* Commonwealth's Brief at 17. In light of the clear elevated specificity requirement of Article I, Section 8 and the uncontroverted recognition that Turpin had a reasonable expectation of privacy in his private bedroom, it is to me an inescapable conclusion that the warrant in this case cannot be upheld in the face of a challenge to its overbreadth.  The warrant should have been issued to exclude the area of the residence within the exclusive control of Turpin or any other known resident.

I recognize the Majority's concern for the practicalities of the execution of search warrants by law enforcement, but those concerns are not implicated in this case.  Turpin was on the premises and specifically identified his private bedroom.  An appropriately specific warrant could have been easily executed, and all of the evidence in the possession of Irvin would have been confiscated, accomplishing the stated mission.

There may be cases where law enforcement, after months of surveillance of a residence, do not detect that individuals other than the target live in that home.  There may also be cases where, at the time of the execution of an appropriately specific warrant, it is not reasonably feasible to determine the area of the residence excluded from its scope.  The case before us does not fit either of these hypothetical situations and I express no opinion on the resolution of cases presenting those circumstances.  Our case law develops incrementally and in my view, the stark facts of this case demand the establishment of a baseline recognition that the reasonable expectation of privacy of unrelated individuals living in a shared residence are constitutionally protected by the warrant provisions of Article I, Section 8 of our Constitution.

For the foregoing reasons, I would therefore reverse the decision of the Superior Court and remand for further proceedings before the suppression court.