J-S46006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH SAIA, JR. | : | No. 1065 EDA 2020 |

Appeal from the Order Entered March 17, 2020
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000264-2018

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                    Filed: January 28, 2021

The Commonwealth, represented by the Office of the Attorney General of Pennsylvania ("OAG"), appeals from the order granting suppression, contending that the suppression court too narrowly construed the terms of the at-issue warrant, which the court interpreted as permitting the police to search Joseph Saia, Jr.'s ("Defendant") home, but not his nearby outdoor shed. After careful review, we reverse.

As recounted in the Commonwealth's affidavit of probable cause, Special Agent Kathleen Fallon of the OAG's Child Predator Section received a tip from the National Center for Missing and Exploited Children ("NCMEC") regarding a

sexually explicit image of a juvenile posted on a Skype profile.[1,2] Affidavit of Probable Cause ("Affidavit"), 2/21/18, at 1-2. While investigating this information, Agent Fallon received another tip from NCMEC regarding a sexually explicit image of a child posted on a Skype profile with a similar username.[3] *Id.* at 3. Skype provided Agent Fallon with the IP addresses of both accounts.[4] *Id.* Agent Fallon viewed the images and confirmed that they appeared "to depict children, under the age of eighteen (18) years old[,] engaged in sexual acts and/or pose[s]," which Agent Fallon "believed to be child pornography in violation of" 18 Pa.C.S. § 6312 (Sexual Abuse of Children). *Id.* at 4.

Agent Fallon subpoenaed PenTelaData for information concerning the two IP addresses. She learned that, at the time the images were uploaded, the IP addresses were both assigned to "Lisa Saia" with a physical address at 115 Sawkill Meadow Lane in Milford, Pennsylvania. *Id.* Agent Fallon scouted the physical address, discovering a ranch-style home with a detached garage. *Id.* at 7. Agent Fallon concluded the Affidavit by stating that there was

---

[1] Agent Fallon was assigned by OAG to the Internet Crimes Against Children Task Force, a multi-jurisdictional entity responsible for conducting undercover online investigations into the sexual exploitation of children.

[2] The Skype profile was linked to the username "joebrewernj."

[3] The second image was posted to a Skype profile linked to the username "jsbrewernj_1."

[4] Agent Fallon was able to determine from a public database that the IP addresses of both accounts were assigned to a company known as PenTelaData.

probable cause to believe "there is evidence of the crime of Sexual Abuse of Children … on [electronic devices] *in the residence or additional buildings* at 115 Sawkill Meadow Lane…." *Id.* (emphasis added). However, in the section of the search warrant application pertaining to the description of the premises and/or persons to be searched, Agent Fallon used different language, indicating that the Commonwealth sought "[a]ll electronic devices *owned or operated by any occupant located within the residence* at 115 Sawkill Meadow Lane … on his/her person and/or within his/her immediate control." Search Warrant Application ("Warrant Application"),[5] 2/21/18, at 1 (emphasis added).

> Defendant
>
> was present at the residence during the course of the execution of the search warrant. During the search, the Agents recovered several electronic devices from within the residence. The Agents also recovered several devices outside of the residence, including [a] Dell tower computer … and a Dell laptop….
>
> On July 22, 2019, … Defendant filed his [suppression] motion in which he sought to suppress any and all evidence retrieved outside of his residence[,] including but not limited to the Dell tower computer, … [the] Dell laptop, … and all of their contents. Th[e suppression court] held a hearing on the [suppression motion] on November 19, 2019.

Suppression Order, 3/17/20, at 2 (some capitalization omitted).

The suppression court ruled that the "evidence retrieved outside the residence should be suppressed as those items were not located within the

---

[5] For clarity herein, the warrant under consideration is the Warrant Application as signed by the issuing authority. They are not separate documents in the record.

scope of the search warrant." *Id.* at 3. The court refused to consider the Affidavit attached to the Warrant Application in defining the scope of the premises to be search, because the Warrant Application "did not state that the [A]ffidavit … is incorporated by reference." *Id.* at 4. In reaching that conclusion, the suppression court specifically relied on the Third Circuit's decision in *Doe v. Groody*, 361 F.3d 232 (3d Cir. 2004), which held that "it is perfectly appropriate to construe a warrant in light of an accompanying affidavit or other document that is incorporated within the warrant[,] but to take advantage of this principle of interpretation, the warrant must expressly incorporate the affidavit." *Id.* at 239.

> Addressing the Warrant Application alone, the court reasoned:
>
> The description on the Application … does not say[,] "premises." The description only says[,] "occupant located within the residence." It does not mention a shed, garage, or vehicles. It would strain common sense and strain the protections of privacy afforded by both the United States Constitution and the Pennsylvania Constitution to interpret the description to mean anything other than the inside of the Defendant's home.

Suppression Order, 3/17/20, at 3-4.

The Commonwealth appealed as of right, certifying that the suppression "order terminates or substantially handicaps the prosecution." Commonwealth's Notice of Appeal, 4/24/20, at 1; *see also* Pa.R.A.P. 311(d) ("In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."). The

Commonwealth now presents the following question for our review: "Did the lower court err in suppressing evidence found next to an outbuilding on [D]efendant's property on the ground that, because the search warrant application used the word 'residence' instead of 'premises,' the search was limited to 'the inside of Defendant's home'?" Commonwealth's Brief at 3.

When reviewing

an order granting suppression, we consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the suppression hearing record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal turns on allegations of legal error, the suppression court's conclusions of law are not binding as it is this Court's duty to determine if the suppression court properly applied the law to the facts. As such, the legal conclusions of the lower courts are subject to our plenary review.

*Commonwealth v. Lukach*, 195 A.3d 176, 183 (Pa. 2018) (cleaned up).

"When an official search is properly authorized-whether by consent or by the issuance of a valid search warrant-the scope of the search is limited by the terms of its authorization." *Commonwealth v. Parker*, 619 A.2d 735, 740 (Pa. Super. 1993). As our Supreme Court explained:

"[T]he Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84 [] (1987), quoting U.S. CONST. amend. IV. This requirement is meant to prevent general searches and "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* Along those lines, "the scope of a lawful search is defined by

the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* (internal quotation and citation omitted).

*Commonwealth v. Turpin*, 216 A.3d 1055, 1063–64 (Pa. 2019).

Instantly, the Commonwealth maintains:

The suppression court refused to consider the [A]ffidavit on the ground that it was not "incorporated by reference." That was error for three reasons. First, the [A]ffidavit was incorporated—the warrant stated on its face that it was based on the attached affidavit. Second, in [*Commonwealth v.*] *Carlisle*[, 534 A.2d 469 (Pa. 1987),] four Justices of the Supreme Court held that the warrant and affidavit are considered together. Third, the suppression court relied on a Third Circuit decision that may not be followed because it contradicts the Pennsylvania Supreme Court. Indeed, the Third Circuit's reasoning makes no sense: it agrees the affidavit may properly guide a search, but only if formally "incorporated." As *Carlisle* shows, words of incorporation are not what make an attached affidavit relevant.

Commonwealth's Brief at 8.

We begin with a summary of our Supreme Court holding in *Carlisle*.

Therein, our Supreme Court stated:

Since the rules do not prescribe any particular form for the written affidavit in support of the warrant, it is possible that the affidavit may be on a separate sheet of paper which is then attached to the warrant, or, as in this case, that the affidavit and warrant appear on a single sheet of paper. In either case, however, the question which arises is whether the affidavit, which must in some form be attached to the search warrant, may be used to augment the description of place listed on a search warrant. Analytically, the two most obvious approaches to this question are either to construe the affidavit and the warrant together, or to construe only the warrant, without regard to the affidavit. In this case, if the two writings were construed together, the place would be described with sufficient particularity…. If the documents are to be construed separately, however, the warrant would fail for lack of particularity….

***Carlisle***, 534 A.2d at 471–72 (footnote omitted).  In addressing this dilemma, the ***Carlisle*** Court first noted:

> In ***Commonwealth v. Gray***, … 503 A.2d 921 ([Pa.] 1985), we decided that the "totality of circumstances" test articulated in ***Illinois v. Gates***, 462 U.S. 213 … (1983), meets the requirements of Article I, Section 8 of the Pennsylvania Constitution for analyzing probable cause for search warrants based on information received from confidential informants.  This case does not concern probable cause, but it is related to the decisions in ***Gray*** and ***Gates*** in that those cases adopt the general view of warrants that they are to be interpreted in a common-sense fashion, not in a hypertechnical fashion.
>
> ***
>
> We believe that the requirement of a "practical, common-sense" approach should apply also to the question raised in this case, whether the place to be searched is specified with sufficient particularity.

***Carlisle***, 534 A.2d at 472.  From that platform, the Court reasoned:

> An argument against holding that the affidavit and the "Description of Premises" box on the warrant are to be construed together is the fear that the police officers who conduct the search will be different from those who wrote the affidavit and that the officers conducting the search will be unaware of what is in the affidavit.  We believe this argument is without merit.  Even if the police who conduct the search are different from the officers who got the warrant, it is inconceivable that those who conduct the search will not read the affidavit in order to learn as much as possible about the possible dangers within the premises they are about to search.  And if police officers unfamiliar with the investigation are likely to read the affidavit and thereby know where they are authorized to search, those familiar with the investigation, *a fortiori*, will know where the items to be searched for are thought to be located and where they are authorized to search.
>
> Applying the "practical, common-sense" rule of ***Gates*** and ***Gray*** to this case, it is our view that the police officers conducting the

search in this case would be aware of the exact location to be searched.

*Carlisle*, 534 A.2d at 472. The *Carlisle* Court further opined that it was

> aware of the possibility that the government may act in bad faith and use its enormous powers to intrude where it should not into the private lives of our people. However, having said that, we do not see such an abuse in this case. Rather, what appears to have happened is that the police officer applying for the warrant inadvertently omitted the apartment number from the box on the form which called for it. Were there reason to believe that this omission was not inadvertent, or were there reason to believe that police officers conducting the search would not reasonably know where the search was to be conducted, our view of this case would be quite different.

*Id.* at 472–73.

We agree with the Commonwealth that *Carlisle* is sufficiently analogous to apply here. The Affidavit expressly indicated that there was evidence of a crime "in the residence *or additional buildings* at 115 Sawkill Meadow Lane." Affidavit at 7 (emphasis added). Agent Fallon, who filled out both the Application and the Affidavit, testified that it was her understanding that the warrant she sought in the Application was for the "entire property and the additional buildings that were on it." N.T., 11/19/19, at 43-44. She further indicated that she had no reason to believe that the property was subdivided in any way, and the at-issue shed was located between the residence and the detached garage. *Id.* at 48-49. Nevertheless, the reference to the additional buildings was omitted from the Application in the section setting forth the "Specific Description of Premises and/or person to be searched." Application at 1. There is nothing to suggest in the record that this was an intentional

omission, nor is there any obvious reason why it would have been omitted given the description of the premises to be searched as set forth in the Affidavit.

When questioned about this, Agent Fallon indicated that it was her understanding that the Warrant Application necessarily included the Affidavit. *Id.* at 58-59. Indeed, the Warrant Application includes boilerplate language within the "Search Warrant" section, which is ultimately signed by the issuing authority. *See* Application at 1. It reads, in pertinent part:

> WHEREAS, facts have been sworn to or affirmed before me *by written affidavit(s) attached hereto* from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, and inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

*Id.* (emphasis added). If this language does not expressly incorporate the attached Affidavit, it at least strongly suggests incorporation.

Additionally, the Rules of Criminal Procedure provide that:

> No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence *outside the affidavits.*

Pa.R.Crim.P. 203(B) (emphasis added). Rule 203(B) requires the issuing authority to review an affidavit of probable cause. Moreover, rather than limit the determination of probable cause by the issuing authority (a component part of which is the description of the location to be searched) to the application, Rule 203(B) limits his or her review to the "affidavits." *Id.*

There is no dispute here regarding whether the Warrant Application and Affidavit were simultaneously presented to the issuing authority.[6]  Reading Rule 203(B) in conjunction with the boilerplate language in the application discussed above, we conclude that, whether or not that language expressly incorporated the attached Affidavit, common sense dictates that, at a minimum, it implicitly did so.  Thus, under **Carlisle**, we are compelled to hold that the suppression court erred by failing to consider the Affidavit in defining the scope of the warrant.  When read in conjunction with the Affidavit, it is obvious that the target of the warrant included buildings on the named property exterior to Defendant's residence in which the at-issue evidence was discovered, not just the residence itself.

Nevertheless, the suppression court held, and Defendant maintains, that this case is instead controlled by the Third Circuit's decision in **Groody**.  Even assuming that the Affidavit was implicitly, not explicitly, incorporated into the Warrant Application, this was error.

As the Commonwealth correctly notes:

> The Pennsylvania Supreme Court has repeatedly explained that decisions of federal courts inferior to the United States Supreme Court are without precedential force or effect in Pennsylvania.  For the Third Circuit to disagree with or contradict a ruling of the Pennsylvania Supreme Court on a question of constitutional law

---

[6] Defendant asserts that the there is no evidence that *he* was presented with the attached Affidavit at the time of the search.  Defendant's Brief at 23 n.3. However, he provides no legal authority suggesting the relevance of that circumstance.  The scope of the warrant was defined at the time of issuance, not at the time it was executed and presented to him.

> does not establish that the Supreme Court's ruling was incorrect. The law is precisely to the contrary.

Commonwealth's Brief at 15.

As this Court has previously stated, our "law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved." **Werner v. Plater-Zyberk**, 799 A.2d 776, 782 (Pa. Super. 2002); **accord Graziani v. Randolph**, 856 A.2d 1212, 1218 (Pa. Super. 2004) (citing **Werner**, but noting that "when considering a given issue, however, we prefer Third Circuit decisions to those of other federal circuits, to discourage litigants from 'crossing the street' to obtain a different result in federal court than they would in [a] Pennsylvania court"). Here, of course, there is no risk of forum shopping between states, as this is a criminal case, pursued by state authorities. Further, the lower court did not cite, nor has our research uncovered, **any** previous case in Pennsylvania citing **Groody**, much less applying it, despite the fact that **Groody** was decided 17 years ago. Moreover, our Supreme Court spoke to the matter at hand in **Carlisle**, which is binding precedent for this Court. Thus, to the extent that **Groody** conflicts with **Carlisle**, this Court must follow **Carlisle** until and unless either the Pennsylvania Supreme Court or United States Supreme Court addresses the issue.[7]

---

[7] We respectfully invite our Supreme Court to do so.

Accordingly, we are constrained to agree with the Commonwealth that the suppression court erred, as a matter of law, when it relied on **Groody** to require an express incorporation of the Affidavit in the Warrant Application for the scope of the warrant to include the additional buildings on Defendant's property. On this basis, we do not reach the question of whether the circumstances discussed above constituted an express incorporation of the Affidavit in the Application, as such a finding is not necessary under a common sense consideration of the facts as required by **Carlisle**. It is enough that those circumstances overwhelmingly suggest that the Affidavit was implicitly incorporated into the Warrant Application, and that the search was "carefully tailored to its justifications[,]" which were set forth in the Affidavit. **Garrison**, 480 U.S. at 84.

Suppression order **reversed**. Case **remanded** for further proceedings. Jurisdiction **relinquished**.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/21

- 12 -