J-S09042-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAZZMAIN C. DORSEY | : | |
| | : | |
| Appellant | : | No. 52 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 12, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006312-2023

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED APRIL 15, 2026**

Appellant Jazzmain C. Dorsey appeals the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after the trial court convicted Appellant of a violation of the Uniform Firearms Act. Appellant argues that the trial court erred in denying his suppression motion in which Appellant alleged that he was subjected to an illegal search and arrest which were not supported by the requisite suspicion or a valid warrant. We affirm.

Appellant was charged with carrying a firearm without a license (18 Pa.C.S.A. § 6105) and carrying a firearm on the streets of Philadelphia (18 Pa.C.S.A. § 6108) after he was found to be in possession of a firearm during a vehicle stop conducted on August 22, 2023 in Philadelphia. The trial court summarized the factual background of this case based on testimony presented

_____

[*] Former Justice specially assigned to the Superior Court.

at the hearing on Appellant's suppression motion that was held on September 3, 2024:

> [Philadelphia] Police Officer George Tsoflias testified that on August 22, 2023, at approximately 11:12 p.m., he observed [Appellant], who was driving a Nissan Pathfinder, disregard a stop sign at the intersection of 60th Street and Larchwood Avenue. Officer Tsoflias followed [Appellant] down Larchwood Avenue and pulled him over after activating his police vehicle's lights and sirens. [Appellant] refused to roll down his driver's window all the way and would not roll down the heavily tinted backseat windows. When asked for his license, registration, and insurance paperwork, [Appellant] became "irate" and asked for a supervisor. After [Appellant] finally handed over his identification, Officer Tsoflias asked whether he had a permit to carry a firearm. Officer Tsoflias testified that [Appellant] didn't answer, "[h]e just kept looking around the vehicle." When Officer Tsoflias repeated his question, Dorsey said he was just "transporting" and was on his way home "from the range." Police officers then removed [Appellant] from the vehicle, placed him in handcuffs and secured him in the back of the police vehicle. Officer Tsoflias conducted a protective search of the area of the vehicle within the driver's reach and observed a handgun on the backseat behind the driver's seat. He left the gun where it was and held the vehicle to obtain a search warrant.

> Detective Gregory Holman testified that he obtained a search warrant to search [Appellant's] Nissan Pathfinder. Upon executing this warrant, Detective Holman recovered a Glock 9 mm handgun with an extended magazine.

> [Appellant] testified on his own behalf. He stated that he had stopped at the stop sign at 60th Street and Larchwood Avenue, but was "propelled" through it due to a pothole. He showed video footage from his [own] dashboard camera that he purported would corroborate his version of events.

Trial Court Opinion (T.C.O.), 6/24/25, at 2-3 (citations omitted). At the conclusion of the suppression hearing, the trial court denied Appellant's suppression motion.

- 2 -

Appellant proceeded to a stipulated waiver trial in which the testimony and exhibits from the suppression hearing were moved into evidence. In addition, the parties stipulated that the firearm in question was operable and registered to Appellant, Appellant did not have a license to carry the firearm, and his license to carry a firearm had been revoked in Pennsylvania. Further, the parties stipulated that Appellant had two character witnesses that would testify to Appellant's reputation of being a law-abiding citizen. Defense counsel argued, *inter alia*, that the prosecution failed to show Appellant had notice that his license to carry a firearm had been revoked.

The trial court convicted Appellant of carrying a firearm on the streets of Philadelphia, but acquitted him of carrying a firearm without a license. On November 12, 2024, the trial court sentenced Appellant to two years' reporting probation. Appellant filed a timely appeal and complied with the trial court's direction to submit a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

1. Was the warrantless "frisk" of the car illegal as the police had neither any subjective belief that [Appellant] was dangerous, nor was there any basis for a reasonable belief that he was dangerous?

2. Was not the search of the car while [Appellant] was under arrest an illegal search incident to arrest, as the arrest of [Appellant] was itself illegal?

3. Was not the warrant that was the basis for the second search fatally defective under the United States Constitution, and independently under Article I Section 8 of the Pennsylvania

Constitution because it completely failed to meet the particularity requirements for warrants?

Appellant's Brief, at 2 (reordered for review).

In reviewing the denial of Appellant's suppression motion, our standard of review is as follows:

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant [appeals from] the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.
>
> Moreover, with respect to the suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part, or none of the evidence presented.

***Commonwealth v. Hoyle***, 337 A.3d 544, 561 (Pa.Super. 2025) (citations, quotation marks, and brackets omitted).

Appellant first argues that the trial court erred in denying his suppression motion as he was subjected to an unlawful warrantless "frisk" of his vehicle when there was no basis to conclude that Appellant was armed and dangerous. We disagree.

In ***Michigan v. Long***, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the United States Supreme Court provided authorization for officers to conduct a protective sweep of a vehicle for weapons during an investigatory

stop under specific circumstances pursuant to the principles set forth in its decision in *Terry v. Ohio*, 392 U.S. 1 (1968).

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.
>
> These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *See Terry*, 392 U.S., at 21, 88 S.Ct., at 1880.
>
> "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.,* at 27, 88 S.Ct., at 1883.

*Long*, 463 U.S. at 1049–50, 103 S.Ct. at 3480–81 (footnote omitted, spacing added).[1]

The Supreme Court emphasized that pursuant to its precedent in *Terry*, "the touchstone of our analysis … is always 'the reasonableness in all circumstances of the particular governmental intrusion of a citizen's personal security.'" *Id.* at 1051, 103 S.Ct. 3469 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880). "Therefore, the balancing required by *Terry* clearly weighs in

---

[1] Our Supreme Court has also specifically determined that the rule announced in *Long*, authorizing limited vehicle searches for weapons to protect officer safety, comports with Article I, Section 8 of the Pennsylvania Constitution. *Commonwealth v. Morris*, 537 Pa. 417, 422, 644 A.2d 721, 724 (1994).

favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and *objectively reasonable* belief that the suspect is potentially dangerous." **Id.** (emphasis added).

Appellant's main argument in this case is that the Commonwealth failed to prove that the protective sweep was justified as there was no evidence that Appellant was dangerous; Appellant also highlights the fact that Officer Tsoflias never testified that he considered Appellant to be dangerous.

However, Appellant ignores the fact that we apply an objective test to determine whether a protective search is warranted; "[t]he relevant inquiry ... is not the officers' subjective beliefs at any given time but the objective reasonableness of the search under the totality of the circumstances." **Commonwealth v. Carver**, 318 A.3d 386, 391 (Pa.Super. 2024) (quoting **Commonwealth v. Watley**, 153 A.3d 1034, 1045 (Pa.Super. 2016)).

In this case, Officer Tsoflias was involved in a late-night roadside encounter with an irate driver on the streets of Philadelphia. Officer Tsoflias pulled over Appellant's vehicle at approximately 11:12 p.m. after observing Appellant travel past a stop sign without stopping. When Officer Tsoflias approached, Appellant flatly refused to provide his driver's license, registration, and proof of insurance. Our review of Officer Tsoflias's body camera footage confirmed that Appellant became enraged with the fact that he was subjected to a vehicle stop; Appellant yelled and clapped his hands

loudly while vehemently and incessantly protesting Officer Tsoflias's statement that he had observed Appellant run a stop sign.

During this encounter, Officer Tsoflias also had a reasonable basis to believe that Appellant was armed. During the traffic stop, Appellant reached into the backseat of his vehicle for several seconds. Officer Tsoflias was unable to view what Appellant could reach in the backseat as Appellant also refused Officer Tsoflias's request that he roll down his heavily-tinted back windows. Thereafter, when Officer Tsoflias asked if anyone in the vehicle had a permit to carry a firearm, Appellant admitted that he was "transporting" a firearm from a shooting range at 11:12 p.m.

Viewing the totality of the circumstances, we agree with the trial court's assessment that there was an objectively reasonable basis to conclude that Appellant was armed and dangerous. Although Officer Tsoflias did not specifically state that he believed Appellant was dangerous, the circumstances in this case would allow a reasonably prudent person in Officer Tsoflias's position to believe his safety was at risk. As such, Officer Tsoflias was authorized to perform a protective sweep of the vehicle for safety purposes.

Thereafter, Officer Tsoflias opened the passenger door behind the driver's seat of Appellant's vehicle and immediately saw a Glock handgun case on top of a reusable grocery bag. Once Officer Tsoflias moved the bag, he discovered an unholstered handgun underneath the sack. Officer Tsoflias did not touch the handgun, but secured the vehicle so that he could obtain a

warrant to seize the firearm. We conclude that the trial court did not err in finding the protective sweep of Appellant's vehicle was justified and legal.

Appellant next argues that that the protective sweep was invalidated after Officer Tsoflias removed Appellant from the vehicle and placed him in the back of his patrol car in handcuffs, an action which Appellant characterizes as an "illegal arrest."

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from being subjected to unreasonable searches and seizures. *Commonwealth v. Saunders*, 326 A.3d 888, 896 (Pa. 2024) (citing *Commonwealth v. Jones-Williams*, 673 Pa. 400, 279 A.3d 508, 515 (2022)). In light of these provisions, our courts have developed three categories of interactions between citizens and police officers:

> The first [type of interaction] is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity.... The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid[,] police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause...

*Commonwealth v. Joyner*, 348 A.3d 230, 236 (Pa.Super. 2025) (quoting *Commonwealth v. Anderson*, 276 A.3d 282, 293-94 (Pa.Super. 2022) (en banc) (quoting *Commonwealth v. Adams*, 651 Pa. 440, 205 A.3d 1195, 1199-1200 (2019) (internal citations omitted))).

- 8 -

It has long been held that officers may order individuals out of their vehicles during traffic stops and may perform a frisk of their person for weapons if they reasonably believe the individual is armed and dangerous. *Long*, 463 U.S. at 1047–48, 103 S. Ct. at 3480 (quoting *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)).

This Court has also held that it is permissible for officers to place individuals in handcuffs during protective searches for safety reasons without escalating an investigative detention to an arrest. *Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa.Super. 2023) ("[f]or their safety, police officers may handcuff individuals during an investigative detention"). *See also Commonwealth v. Rosas*, 875 A.2d 341, 348 (Pa.Super. 2005) (quoting *Commonwealth v. Guillespie,* 745 A.2d 654, 660–661 (Pa.Super. 2000) (act of handcuffing suspects during an investigatory detention "was merely part and parcel of ensuring the safe detaining of the individuals during the lawful *Terry* stop" and did not constitute an arrest).

In this case, there was no indication that Officer Tsoflias intended to arrest Appellant when he asked him to step out of the vehicle; rather, the circumstances show that the officers that responded to assist Officer Tsoflias placed Appellant in the back of a patrol car in handcuffs to allow Officer Tsoflias to conduct the protective sweep of Appellant's vehicle. Appellant was not transported anywhere against his will but was placed there to allow the search to proceed. None of the officers threatened Appellant, but rather attempted to calm him down and asked him to relax, given that Appellant was in an

agitated state. Appellant was in the patrol vehicle for a short period of time (just minutes) before Officer Tsoflias observed the firearm in the backseat of Appellant's vehicle.

As such, we conclude that the trial court properly found that the officers' decision to place Appellant in handcuffs in the back of the patrol vehicle did not escalate the investigative detention to a custodial arrest given other factors present in this case. We emphasize that "[a]llowing police officers to control all movement in a traffic encounter...is a reasonable and justifiable step towards protecting their safety." **Commonwealth v. Wright**, 224 A.3d 1104, 1109 (Pa.Super. 2019) (citation omitted).

Appellant also challenges the validity of the search warrant authorizing the subsequent seizure of the firearm from the vehicle. Appellant alleges that the warrant failed to meet constitutional particularity requirements as it failed to list the items to be seized with sufficient specificity. As noted above, Detective Holman applied and obtained a search warrant for Appellant's vehicle using a standard warrant form. In the warrant section that asked the affiant to "Identify Items to Be Searched For And Seized (Be as specific as possible"), Detective Holman simply typed "Vehicle."

While the Commonwealth acknowledges that the warrant form itself did not identify the items to be seized in the search, the prosecution argues that such information was included in the accompanying affidavit of probable cause. The warrant referred to the attached affidavit of probable cause which detailed the circumstances of the investigation and specified that "I the affiant

will be searching for *firearms, ammunitions, any ballistics evidence and proof of ownership, and all items of evidentiary value related to this investigation*." At Appellant's suppression hearing, Detective Holman testified that he had just returned to duty after being out for several months and admitted that it was "possible [he] did not fill [the warrant] out correctly." N.T., 9/3/24, at 56-57.

The Fourth Amendment of the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV (emphasis added). Article I, Section 8 of the Pennsylvania Constitution provides that "no warrant to search any place or to seize any person or things shall issue without describing them *as nearly as may be*." Pa. CONST. Art. I, Section 8. **See also** Pa.R.Crim.P. 504(2) (requiring every complaint to contain "a description of the defendant *as nearly may be*") (emphasis added).[2]

As a result, "a warrant must describe with sufficient particularity the person or property to be searched, and must not be sought for the purpose of

_____

[2] Our Supreme Court has determined that while these two constitutional provisions are similar, "the text of the Pennsylvania Constitution, 'as nearly as may be,' requires more specificity that the federal particularity requirement." **Commonwealth v. Laventure**, 586 Pa. 348, 363, 894 A.2d 109, 118 (2006) (citing **Commonwealth v. Waltson**, 555 Pa. 223, 229, 724 A.2d 289, 291 (1998) (citation omitted)). As such, "the 'as nearly as may be' language of the Pennsylvania Constitution (and correspondingly that of Rule 504(2)) subsumes the requirement of the Fourth Amendment that a warrant must 'particularly describe' the person [and things] to be seized." **Laventure**, 586 Pa. at 363, 894 A.2d at 118.

generally 'rummaging' through an individual's possessions." *Commonwealth v. Choice*, 345 A.3d 719, 734 (Pa.Super. 2025) (quoting *Commonwealth v. Young*, 287 A.3d 907, 920 (Pa.Super. 2022)). Thus, warrants must "(1) describe the place to be searched and the items to be seized with specificity[,] and (2) be supported by probable cause to believe that the items sought will provide evidence of a crime." *Choice*, 345 A.3d at 733–34. However, we emphasize that warrants "should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." *Commonwealth v. Rega*, 593 Pa. 659, 684, 933 A.2d 997, 1012 (2007) (internal quotation marks and citation omitted).

We reject Appellant's suggestion that the trial court erred in construing the warrant form and the attached affidavit of probable cause together when determining whether the warrant met constitutional particularity requirements. We find this Supreme Court's decision in *Commonwealth v. Carlisle*, 517 Pa. 36, 534 A.2d 469 (1987) to be instructive. In that case, officers obtained a warrant to search an apartment building where a suspected illegal gambling operation was located. While the warrant form did not specifically identify the particular apartment that was to be searched, the accompanying affidavit of probable cause identified the specific floor and number of the targeted apartment. The defendant in that case argued that the warrant was defective as it did not describe the place to be searched with sufficient particularity given that the affiant failed to specify the particular apartment to be searched on the warrant form.

The Supreme Court upheld the validity of the warrant, finding that the warrant, when construed together with the accompanying affidavit of probable, satisfied constitutional particularity requirements. *Id.* at 43-44, 534 A.2d at 472-73. Applying a "practical, common-sense" approach, the Supreme Court found that the warrant clearly informed the officers executing the warrant of the exact location to be searched as the affidavit of probable cause listed the specific apartment number. *Id.* Moreover, the Supreme Court noted that there was no indication that that the omission of the apartment number on the warrant was intentional but found the officer applying for the warrant inadvertently omitted the apartment number from the box on the warrant form where the precise location of the search was to be described. *Id.*

Similarly, in this case, we agree with the trial court's finding that the warrant, when read together with the attached affidavit of probable cause, clearly described the vehicle to be searched and the items to be seized with specificity. The warrant and affidavit of probable cause were sufficiently particular to allow officers conducting the search to know the exact items to be seized from the vehicle. Further, there is support for the trial court's finding that the omission of this information from the warrant was inadvertent given that Detective Holman candidly testified that he filled out the form incorrectly. Therefore, the trial court did not err in upholding the validity of the warrant.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/15/2026</u>